Tompkins, J.,
delivered the opinion of the Court.
Ingram commenced his action against Matthien in the Circuit Court of Boom? county, and there had judgment for five dollars, and not being content, sued out his writ of error to reverse the judgment of that Court. On the trial of the cause it was proved that Ingram had sold to Matthien a lot of goods for one thousand and seventy dollars, and that on the 28th day of May, 1831, Matthien agreed to execute his note with security to Ingram for that sum of money, and that he failed to do so. The *151 plaintiff then applied to him to execute-jais note according to contract, and he refused to do it.
The goods were then conveyed by wagons from Eayette in Howard county, where they had been sold, to Huntsville in Randolph county, a distance of about twenty-five miles. There they were sold at auction by order of Ingram, under whose direction they had been conveyed to that place. They were sold for eight hundred dollars. The hire of a clerk it was proved amounted to twenty-one dollars, and evidence was given of other expenses as of transportation, and fees of persons necessarily employed in selling goods by auction. The plaintiff then by his counsel prayed the Court to give many instructions, which were refused. The sum of the instructions prayed is, that “if the jury find Matthien agreed to purchase the goods for any given price, and failed to comply with his contract in executing his note therefor, and in receiving the goods, then the plaintiff might lawfully sell the goods: and if the plaintiff did use due diligence in selling them, and did in good faith sell them for a price less than Matthien the defendant had agreed to give, in such case the defendant ought to pay to the plaintiff' the difference between the price agreed on between them, and the amount of the sales of the goods after deducting all reasona-sonable expenses.”
Both plaintiff and defendant to support their case, cite the case of Sands & Crump v. Taylor & Lovett, 5 John. Rep. 395. On the side of defendant in error, it is contended that the plaintiff in error had no right to demand the difference between the amount of sales and the price agreed on, unless he had given notice of his intention to sell and had sold at Fayette where the contract was made. On the other side it was contended that notice was not material, and the removal of the goods to Huntsville was immaterial, provided they were not therefore sold at a less price. In the case above cited from 5 Johnson, there had been a delivering of a part, and the Court say, “ after the defendants’ refusal to accept the residue of the cargo, it was thrown on the plaintiffs’ hands, and they were by necessity made trustees to manage it: and being thus constituted trustees or agents for the defendants, they must either abandon the property to destruction by refusing to have any concern with it, or take a course more for the advantage of the defendants by selling it.” There is a strong analogy between this case and that of the assured, in case of an abandonment, after a loss has happened within the policy, and the assurer refuses to accept the abandonment. In both cases the party in possession is to he considered an agent for the other party from necessity, and his exercise of the right to sell, ought not to he considered a waiver of his rights on the contract. This rule operates justly as respects both parties, for the reasons which induced one party to refuse the acceptance of the property, will induce the other to act fairly, and sell it to the best advantage. It is a much fitter rule than to require it of the party on whom the possession is thrown against his will, and contrary to the duty of the other party to suffer the property to pensk as a condition on which his right to damages is to depend.” That Court then said that there were no decisions in the hoolcs, either establishing or denying the rule adopted in that case, but that it appeared to be founded on principles dictated by justice and good sense. In this opinion of that Court we readily concur, and like them we think that Ingram in the cause before us became the agent of Matthien by necessity, when Matthien refused to take the goods into his own possession, and that in order to acquire the right of an agent, it was not necessary for him to give Matthien notice of his intention to sell. Matthien could not have complained had Ingram *152 abandoned the goods, and thereby a total loss had accrued. 'But Ingram having undertaken to sell them, he was bound to discharge that duty faithfully, and to account for the proceeds of the sale: he also is justly entitled to be compensated out of the proceeds of such sale for all reasonable expenses: and then the difference between the price which Matthien agreed to pay for the goods, and the nett amount of the sales of the same, is what we think Ingram is entitled to recover from Matthien. It was contended, however, for the defendant, that Ingram by transporting the goods to Huntsville, forfeited all claim to recover the difference from Matthien. We do not think so. We are of opinion that Ingram ought not to recover the expense of transportation from Payette to Huntsville, unless he can prove that the goods sold at Huntsville for a better price than they could have been sold at Payette, and that the goodness of the market warranted the expense incurred in transportation. On the other hand we believe that if Ingrain, by removing the goods to Huntsville, caused them to sell for less than they might have been sold at Fayette, Matthien is entitled to an allowance for the loss so sustained. We will further add that in our opinion Ingram ought to be allowed as a part of the necessary expenses, the license of an auctioneer, provided it were necessary to have one licensed for the purpose of that sale.
The judgment of the Circuit Court is, therefore, reversed, and the cause remanded and a new trial awarded.