10 663
32a 397

GATHWRIGHT vs. CALLAWAY COUNTY AND STATE OF MISSOURI.

1. A bond payable to "Callaway county and State of Missouri," is payable to Callaway county alone. The words "and State of Missouri" merely designate the Callaway county, and are equivalent to "of" or "in the State of Missouri."

2. The circumstances under which an instrument is made may be looked to, to aid in its construction.

3. The rules of interpreting contracts ought not to be subtle—are not an art of logic—but are intended for persons of common understanding—are plain reason.

4. Where a bond is set out according to its legal effect, and not *in haec verba*, if no oyer be craved, the court will take it to be as averred.

5. A bond being given to two corporations, an action may be maintained by them jointly.

6. A bond given to do some public service, although not good as a statutory bond, may yet be good at common law.

7. A bond given to build a bridge and keep it in repair a given time, will bind the obligor to rebuild, if the bridge be washed away even by an extraordinary flood in such time.

8. The remedy given by the 13th and 14th sections of the act concerning bridges is merely cumulative, and does not affect the right of action upon the bond. In such action, no notice to the obligors to repair is necessary.

9. The proper measure of damages, where the bridge has been washed away, is the cost of rebuilding, with such premium as is necessary to ensure the bridge against the contingencies embraced in the bond, for the time specified therein.

10. If the obligors delay the rebuilding for an unreasonable time, the county may also recover damages for such delay: these damages depend upon circumstances—such as the public utility of the bridge, &c.—and are not six per cent. on the amount due from the obligors, from the time they should have repaired.

## APPEAL from Callaway Circuit Court.

Todd & Hardin, *for Appellant, insist:*

1. The action is brought in favor of two corporations, which, by statute nor general law, can join in action; this is not obviated by reason of a bond executed to such obligees; the law vests the right in the county, and she should sue; the State has no right under the contract; and when she cannot contract, she cannot sue.

2. The bond, *though thus* informal, is a statutory bond, and the suit and proceedings, and construction of the contract, must be in conformity to the statute.

3. The demurrer should have been sustained also, for there is no averment of notice and demand of the contractor to repair the bridge, after its loss and destruction.

4. The evidence of the original cost and mode of payment for the bridge was incompetent and irrelevant, and misled the jury as to the true assessment of damages.

5. That the bridge having never been rebuilt, no interest should have been allowed, as for money advanced by the county.

6. For the same reason, no sum to cover risk and warranty of a new erection should have been allowed.

7. The court erred in the criterion of damages, for the statute fixes the damages at the sum the commissioners may contract for upon refusal of the undertaker to make the repairs.

8. The court also erred, for it was in proof that there was an entire destruction of the bridge by flood, not by fault of undertaker; a repair, under such circumstances, is not within the condition of the bond.

9. If the defendant is bound for damages to the value of the repair, then the assessed value is unreasonable and oppressive, for three witnesses of four, acquainted with values, fix them at $450 and under.

GORDON, *for Appellees, insists:*

1. The plaintiffs are persons in law, and capable of suing on a bond made payable to them.

2. The defendant covenanted to build the bridge in a particular manner, and to keep the same in good repair for four years; he was therefore bound to rebuild the bridge, though broken and destroyed by an extraordinary flood. 6th Term R., p. 650 and 751; 16 Mass. R., 238; 3 Monroe's R., 376.

3. The bond sued on, if not good under the statute, is good at common law. 2 J. J. Marshall's R., 473; 4 Monroe's R., 225; 2 J. J. Marshall's R., 418; 2 Bibb R., 199; 4 Litt. R., 235; 2 Litt. R. 306; 3 Monroe's Reps., 342.

4. The court committed no error in refusing the instructions asked by the defendant, nor in giving the instructions asked by the plaintiffs.

5. The amount paid for building the bridge was competent evidence in order to enable the jury to ascertain the amount of damages to which the plaintiffs were entitled.

6. The court committed no error in instructing the jury that they might give interest by way of damages on the amount which they might find against the defendant. 2 Greenleaf's Evidence, p. 217; 1 Mass. R., 308.

7. The defendant is estopped to deny the authority of the plaintiffs to sue on this bond. 3 Marsh. R., 303; 2 Litt. R. 211, 310; 1 J. J. Marsh. R.. 380; 2 J. J. Marsh. R., 280; 1 Litt. R., 418.

SCOTT, J., *delivered the opinion of the Court.*

This is an action of debt on a bond executed under the statute concerning bridges, conditioned to build and keep in repair for four years a bridge across the river Aux Vaux, in Callaway county. The style of the suit was Callaway county and State of Missouri *vs.* Alexander Hord and Mat. W. Gathwright, and it abated by death as to Hord. The declaration used the plural number, showing that both the county and State sued. The bond was payable to "Callaway county and State of Missouri." A demurrer was filed to the declaration, which was overruled, and afterwards a judgment by default was taken. On the trial of the truth of the breaches and the assessment of damages, it appeared that the bridge had been built according to contract, and accepted. It was completed in June, 1840, and was washed away by high waters in the spring of 1842. The defendants covenanted to keep it in repair for four years. The action was brought for not rebuilding it. The building of the bridge and the insurance of it for four years were let at $1000, part of which was

43

paid by the county and part by subscribers.   The court gave, at the instance of the plaintiff, the following instructions:

1. The jury ought to assess such damages in this action as the plaintiffs have sustained by reason of the defendant failing to comply with the condition of the bond sued on at the time when said bridge should have been repaired.

2. The jury may give six per cent. interest, by way of damages, on the amount which they find to be due, from the time the defendant ought to have repaired the bridge; to which the defendant excepted.

The defendant asked the following instructions:

1. That in this case the plaintiff is not entitled to recover any damages by way of interest on the value of the repairs, which the County Court might have authorized to be made after the destruction of the bridge.

2. That the jury cannot assess by way of damages any part of the private subscription made or paid by individuals.

3. That the assessment must be made for the reasonable value of the repairs, to be made in a reasonable time after the destruction of the bridge.

4. That in the assessment, they cannot allow for damages any risk in the preservation of the bridge after such repair was done or ought to have been done.

5. That in this case no damage for risk or warranty of any bridge or part can be allowed, as the bridge was never rebuilt.

6. That the jury will not find any damage upon the first breach in the plaintiff's declaration, as assigned; which the court refused to give, to which an exception was likewise taken.   Verdict for the plaintiffs for $758 35.

It was objected to the declaration, that the action was improperly brought in the names of "Callaway county and State of Missouri;" that it was a joinder of two corporations as plaintiffs, which by law is not permitted.   No oyer of the bond was craved, consequently it is not set out in the pleadings.   We must take it as it appears on the face of the declaration.   If the bond was in fact payable to the county of Callaway and to the State of Missouri, the principle is not obvious on which an objection to a declaration on it in the names of both corporations would lie.   If an obligation is made to two distinct corporations, there is no rule of law which prevents them from sustaining a joint action upon it. It cannot be maintained that, if a bond is executed without any undue advantage or any degree of oppression or extortion by one undertaking to serve the public, that a mistake in the name of the obligee will avoid

the instrument. If not valid as a statutory bond, it will be held good as a common law security.

If the bond on which this suit is founded be worded as it is stated in the declaration, its interpretation is plain. We may look to the circumstances under which an instrument is made, to aid us in its construction.— Lawrence vs. Dole, 11 Ver. Governed by this principle, there can be no hesitation in saying that the meaning and sense of the bond is, that it was payable to Callaway county *in* or *of* the State of Missouri. The words "the State of Missouri," were used merely to designate the Callaway county to which the bond was payable. There might have been other counties named Callaway, at least in other States. The rules of interpretation ought not to be subtle; they are designed for people of common understanding; not as an art of logic, but as the plain reason of a father of a family. It is sufficient, if a plaintiff in his declaration sets out an instrument on which he declares according to its legal effect. He is not tied down to a literal recital of it. To whom the instrument on which this suit is brought, was really payable, does not appear otherwise than as is averred in the declaration. There is nothing showing that it is otherwise worded than as is therein averred. As before observed, there being no oyer of the bond prayed for, and it not being set out *in hæc verba*, so that the court can see whether its legal effect has been misconceived, the defendant can have no benefit of any error that may have been committed in this respect.

Although the bridge was carried away by a flood, yet, under his agreement, the builder is bound to repair. It is an established rule, that when a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he can, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. Therefore, if one covenant to keep a house in repair, although it be carried away by flood or thrown down by tempest, yet he is bound to repair it. But when the law creates a duty, and the party is disabled to perform it without any default in him, and he has no remedy over, the law will excuse him, as in waste, if a house be destroyed by tempest.— Bricknock Navigation Company vs. Pritchard, 6 Term Rep., 750; Story on Bailments, 37, 38.

It was maintained for the defendant, that under the 13th and 14th sections of the act concerning bridges, the right of action for not repairing a bridge could only accrue after a notice in writing to the undertaker or his security to make the repairs, and a failure on their part to do so; and the declaration not having averred any such notice, is therefore defec-

tive. It is obvious that the remedy provided by these sections is merely cumulative, and does not affect the right of action on the bond. As the defendant covenanted that the bridge should be kept in repair, the fact of its being dilapidated or being washed away was one as much in his knowledge as in that of the commissioner of the county, and he was bound to take notice of it. Had the county abandoned the remedy on the bond, and sued for money expended in repairing the bridge, as she might have done under the above mentioned sections, as such action was given by statute, she would then have been compelled to show that she had pursued its terms, in order to maintain it.

As to the damages, the proper measure of them was the cost of rebuilding the bridge, together with the sum or premium that might be necessary to procure an insurance of it against the perils which the builder's obligation covers, for the remainder of the term for which he covenanted to keep it in repair.

The evidence in relation to the sum advanced by subscribers towards building the bridge, was irrelevant. The question was not who paid for the bridge, but what it was worth. Nor was the county seeking to recover the money she had expended in building the bridge, that it should be necessary to ascertain the amount paid by her. The sole question was as to the amount of damages the county had sustained in consequence of the failure of the defendant to repair the bridge, and evidence showing the cost of the first bridge was admissible.

If the defendant delayed for an unreasonable length of time to repair the bridge, the county was entitled to the damages she could show she had sustained by such delay. These would depend on *circumstances.*—The utility of the road on which the bridge was built—the necessity of a bridge at the place of its former location—the inconvenience sustained by the inhabitants for the want of it, and various other considerations, would affect their amount. The court therefore erred in giving the second instruction asked by the plaintiffs; and, the other Judges concurring, the judgment will be reversed and the cause remanded.