THOMAS DOBBINS, Defendant in Error, v. O. J. EDMONDS ET AL, Plaintiffs in Error.

Kansas City Court of Appeals, June 8, 1885.

1. PLEADING—ACTION FOR BREACH OF CONTRACT—NECESSARY AVERMENTS.—In an action for breach of contract if the petition avers in substance that the plaintiff kept and performed all the conditions and provisions of the contract to be kept and performed on his part, but the defendants failed to perform the same on their part; or that plaintiff tendered performance, and it was refused, and alleging damages, this is sufficient. It is not necessary to show actual performance where tender of it was declined.

2. CONTRACTS—INTERPRETATION OF—WAIVER.—Among the recognized rules for the interpretation of contracts are the following: The circumstances under which the contract is made may be looked to in aid of the construction; and the acts of the parties to the instrument are entitled to great weight. *Gathwright v. Callaway*

*Co.*, 10 Mo., 663 ; *Patterson v. Camden* 25 Mo. 13. And the necessity of performing a condition precedent may be waived by the party in whose favor it is stipulated, either expressly or by the implication resulting from his acts or conduct. *Benjamin on Sales* (4 Ed. 566 ) ; *Pond v. Wyman*, 15 Mo. 176. *Nearns v. Herbert*, 25 Mo. 354.

3.   MEASURE OF DAMAGES—CONFLICTING METHODS OF ASCERTAINING PROPER MEASURE OF DAMAGES OF BROKEN CONTRACTS.—The courts have suggested three different methods of ascertaining the proper measure of damages on broken contracts : (1) When the plaintiff is prevented from completing the contract by the refusal to perform of the other party in the case of a contract of sale of personal property, he may go on and complete the contract on his part, and recover the contract price ; *or, second*, in such case he may treat the contract as ended, and retain the property as his own and sue for the difference between the market value thereof and the contract price ; *or, third*, in such case, he may sell the property at auction or at private sale for the best price he can command and sue for the recovery of the difference between the price realized and the contract price. The weight of authority seems to be in favor of the latter mode, but it is claimed by high authority, that the American doctrine is that the vendor, in such case, has ordinarily a choice of either of the three remedies. Benjamin on Sales (4th Ed.), sect. 788 ; Sedgwick on Damages (7th Ed.), vol. 1, p. 593–596 ; Parsons on Contracts (7th Ed.), vol. 3, p. 200–210 ; *Shawhan v. Van Nest*, 25 Ohio St. 490 ; *Pallen v. Le Roy*, 30 N. Y. 553 ; *Crawford v. Earl*, 38 Wis. 312 ; *Steinburg v. Gibhart*, 41 Mo. 520.

ERROR   to Carroll Circuit Court, HON. JAS. M. DAVIS, J.

*Affirmed.*

Statement of case by the court.

This is an action for damages growing out of an alleged breach by defendants, of the following contrtact made between plaintiff and defendants.

" This agreement, made and entered into on this 18th day of April, 1879, by and between Thomas Dobbins and Barnett, Edmonds & Co., witnesseth :   The said Dobbins is to furnish at the mills of Barnett, Edmonds & Co., as soon as the water will permit, and the aforementioned logs can be rafted there, the following logs, to-wit, at the following prices :

100,000 feet burr oak at.....$8.00 per thousand feet.
100,000 feet water oak, at....8.00 per thousand feet.
50,000 feet elm, at...........5.00 per thousand feet.
35,000 feet hickory, at.......6.00 per thousand feet.
50,000 feet sycamore, at......5.00 per thousand feet.
150,000 feet cottonwood, at...5.00 per thousand feet.

"A portion of which timber has already been delivered, and is to be computed herein, and a portion of said logs have been paid as by parties agreed. The logs to be measured and scaled agreeably to Scribner's before being put into the river. The payment of said logs to be made as delivered as follows: Five hundred dollars to be paid May 30th, 1879, and five hundred dollars on the 30th of each month thereafter, provided there had been logs sufficient at the above prices delivered to amount to said sum, and if not, then to be paid only for the quantity delivered at said prices, the said logs to be cut and trimmed up in good order, and to be merchantable saw logs.

Signed,

"THOMAS DOBBINS,
"BARNETT, EDMONDS & Co."

The petition after setting out the general terms of the contract, alleges that in pursuance of its provisions the plaintiff prepared and rafted the logs as agreed upon to the mills of defendants, and in all particulars performed the things required of him by the contract; but the defendants refused to comply therewith; that plaintiff at the time required by the contract tendered said logs to the defendants at their said mills, but the defendants refused to accept or pay for the same. By reason whereof the plaintiff was damaged in the sum of $2,000.00, for which he asks judgment.

The answer tendered the general issue.

The controversy seems to be over the logs rafted in July and August. The evidence on the part of the plaintiff tended to show that he prepared logs on the banks of Grand river according to the contract, and that thereupon he notified the defendants that they were ready, and for them to come and attend to the matter of

the measurement and scaling. One of the defendants did then visit the ground, but refused to make any such measurement and scaling, alleging as a ground therefor that the logs were not merchantable. Thereupon the plaintiff proceeded to have the logs measured and scaled according to Scribner's rule, and floated them to the mills, and tendered them to the superintendent of defendants' mills, who ¬eclined to receive them, as he was instructed by the defendants not to receive or pay for them. The plaintiff thereupon tied up the logs at the mills. A few of them he afterward sold. He claims that he sold all he could find a market for, and for the best price he could obtain. A freshet came along and washed away the rest, which were thereby totally lost.

Much evidence was given at the trial, pro and con, as to the merchantable quality of the logs, as called for by the contract. Whether the logs were of the character required by the contract, and whether or not they were correctly measured and scaled according to Scribner's rule, were fairly enough submitted to the jury by the instructions given.

On the measure of damages the court declared the law on behalf of plaintiff to be that, if he complied with the terms of the contract on his part, and the defendants refused to participate in the measurement and in the scaling, and also refused to receive the logs after tendered at the mills, as provided by the contract, the plaintiff had the right to sell the logs as he did ; and, after accounting for the proceeds of such sale, he was entitled to recover the contract price for the residue of the logs so delivered, provided they were of proper quality, etc. * * * On the other hand, defendants asked the court to lay down the rule of damages to be that the plaintiff, if the contract was broken on the part of the defendants, could only recover the difference between the contract price and the market value of the logs at the point on Grand river where they were scaled. The defendants also asked the court to declare the law to be that, if the defendants declined to join in making said measurement, etc., before the logs were floated, that put

an end to the contract, and the plaintiff could only recover as damages the difference between the contract price and the market value of the logs. The court declined to instruct as requested by defendants. There were other instructions, which are not material to the determination of the real question involved, and there are others which will be noticed in the opinion of the court. The jury found the issues for the plaintiff, and assessed his damages at $1,891.75. The defendants have brought the case here on writ of error.

FORRIST & FRY, for plaintiffs in error.

I. The petition counts on the *sale and delivery* of the logs named in it, and prays for the contract price. To this there is a general denial. Such action can not be maintained, except by showing on the trial such sale of the property as would transfer the title to the logs from seller to buyer, the same having been delivered. 1 Chitty Plead. (9th Am. Ed.) top paging 355; Hilliard on Sales (2d Ed.) p. 391; *Ober v. Executor of Carson,* 62 Mo. 212.

II. The whole case, on the evidence, showed no such *sale or delivery.* The contract was *executory* only; was an agreement to purchase certain logs, in certain quantities, of certain quality, in the future, upon condition that the minds of the parties would meet touching the *quality* and *quantity* of the logs, on the banks of Grand river. This condition never happened, and *without which* happening, nothing was, or could be, bought or sold or delivered, and the contract *eo instante* was at an end. It had no existence, except as a foundation for a suit by the injured party against the party in fault for damages, upon a *special* and proper count for so wrongfully putting an end to said contract. Hilliard on Sales (3d Ed.) p. 135; *Golden v. Ogden,* 15 Pa. 523; *Frith v. Beach,* 15 Wendell 221; *Scudder v. Worston,* 66 Mass. 530; Benjamin on Sales (1st Ed.) sect. 352; *Young v. Austin,* 6 Pick. 232; *Singham v. Eggleston,* 27 Mich. 324; *Chapman v. Sheppard,* 39 Conn. 413; Chitty's Plead. (9th Am. Ed.)

top p. 143, 343; *Butler v. Butler*, 77 N. Y. 47. Therefore, instruction of defendants should have been given.

III. The *rule of damages* in this case *was not* the contract price for the logs, but was the amount plaintiff had lost by breach of the contract; *i. e.*, at the place where measurement was to be made, to make it and put an end to it, and show value there. The case showed that after delivery plaintiff converted a large portion of the logs to his own use, otherwise than by sale, for which he was accountable. Sutherland on Damages, 173; *Ingram v. Rankin*, 47 Wis. 406; 2 Sedg. on Damages (3d Ed.) side paging 275; Benjamin on Sales (4th Ed.) sect. 1117; *Northorp v. Cook*, 39 Mo. 203.

IV. As to what *was scaling and measuring* of the logs, and by whom to be done, this was a legal proposition, and should have been settled by the instruction, and not referred to jury, as was done by instruction, which referred a question of law to the jury. *Hassett v. Rush*, 64 Mo. 325; *Hudson v. St. L. &c., R. R.*, 53 Mo. 525; *Cocher v. Cocher*, 2 Mo. App. 451. The lumber agreed to be purchased was *all* to be well trimmed and merchantable. This was not done by plaintiff, but the instruction was on the basis of contract being complied with by plaintiff. *Crane v. Roberts*, 5 Greenl. Rep. 419. To be told in such case by instruction that "a fair average lot of logs was what the contract called for," is *not law*.

V. The case was tried and submitted to the jury upon an erroneous theory, and upon issues made by the *instructions*, and not within the pleadings, and on which erroneous issues the jury found. The error should have been corrected on the motion in arrest of judgment. *Capital Bk. v. Armstrong*, 62 Mo. 65; *Iron Bk. v. Same*, *Ib.* 73, and authorities cited.

KINLEY & WALLACE, for defendant in error.

I. The petition is for damages for violation of the contract, and asks the proper relief. Green & Myers' Mo. Pract., sect. 677; Sedg. on Damages (4th Ed.) side p. 381.

II. After the offer to deliver the logs, plaintiff had

the right either to abandon them to defendants at their mill, or sell them for the best price he could get. The fourth instruction for plaintiff is correct. *Ingram v. Mathein*, 3 Mo. 151; *Sand v. Lovett*, 5 Johns 395; *Hunter v. Watson*, 84 N. Y. 549; *Shawhan v. Van Nest*, 25 Ohio 490; Benjamin on Sales (2d Am. Ed.) sect. 788; *Cullen v. Bimm*, 37 Ohio 236.

III. The refusal of defendants to *scale* the logs did not prevent plaintiff from doing it and holding defendants to the contract, upon compliance by plaintiff with the terms of it. *Ohio Falls Co. v. Menzies*, 90 Ind. 83; *Attix v. Pelan*, 5 Iowa 336.

IV. Unless vendor chose to regard the articles sold as his own after vendee refused to receive them, *the value does not enter into the case*. He is not so required to consider them, but may *consider them as vendee's*, subject to his order, when he can recover full price, according to contract. 2 Parsons Cont. (6th Ed.) 208, and note. If vendor is willing to take the risk of goods becoming destroyed after offer to deliver, he has right to do so, or can sell, *as in this case he did*, for all he could. *Bennett v. Smith*, 15 Wendell 493.

V. There is no just cause of complaint as to the instructions given and refused. Those given presented the case fairly, and those refused were either because of no evidence to justify them, or upon wrong theories of law, as notably in first and fourth instructions asked for defendants.

VI. The case was tried upon the theory that as the plaintiff had contracted to deliver the logs to defendants *at their mill* at Brunswick, that when the logs were offered to defendants, it was their duty to receive and pay for them at that time and place, *if the logs were as contracted for*. The delivery at *the mill* was a condition precedent to plaintiff's right of action; a delivery elsewhere, or a non-delivery, would have created no liability on part of defendants. 2 Parsons Cont. (6th Ed.) marg. page 529, notes and cases; *Endman v. Rapids*, 21 Iowa 529.

VII. The offer to deliver the logs to defendants

made it their duty, if *in accordance* with the contract, to take and pay for them. By their refusal, they left the plaintiff to do one of three things. He could abandon the logs after the delivery *at the mill;* or, he could sell all of them he could for the best figure possible; *or*, he could appropriate them himself. Defendants could not end the contract by their own wrongful acts by refusing to measure and scale the logs. The only disagreement was as to the quality of the logs, and the jury has found them to be according to contract. Sedg. Meas. Damages (4th Ed.) 322.

VIII. There were no questions of law referred to the jury; but the jury were fully and carefully informed of the law by the instructions. As to the logs lost by the rise in the river, the loss should fall upon defendants, by whose wrongful violation of their agreements the whole loss was occasioned.

Opinion by PHILIPS, P. J.

1. It is insisted by defendants, plaintiffs in error, that the petition counts on an absolute sale and delivery of the logs, and prays judgment for the contract price; and that to maintain such action, the proof must show such delivery of the property as would thereupon transfer the title unconditionally to the defendants. We do not think this is fair or admissible construction of the petition. It is quite manifest that the declaration avers that the plaintiff kept and performed all the conditions and provisions of the contract to be kept and performed on his part, but the defendants failed to observe the same on their part; that plaintiff, as required by the contract, made tender of the logs to defendants at the point of delivery designated in the contract, but the defendants refused to receive or pay for the same; wherefore plaintiff is damaged. The action is clearly for the breach of the contract on the part of defendants, and to recover damages therefor. As such, it was rightly brought.

2. It is next insisted that the contract was executory, and that the condition or event which was to make it consummate not having transpired, it thereafter had

no existence, except as the foundation for a suit by the injured party against the party in default for damages for wrongfully putting an end to it. This postulate is founded on the following clause in the contract: "The logs to be measured and scaled agreeably to Scribner's, before being put into the river." It is contended by defendants that this measurement and scaling were to be the concurrent act of the parties to the contract; and, therefore, when the defendants refused to participate therein, the thing to be done, which was in the nature of an act precedent, never occurred. Therefore, there could be no delivery of the logs under the contract, and the action should have counted on the wrongful refusal of defendants to join in making the measurement; in which event, the measure of damages would have been different from what plaintiff asserts in the case at bar. We concede that the proper construction of the clause in question is that the measurement and scaling were to be done by both parties. It was certainly not the intention of the parties that either should be bound by measurement, etc., to which he was not a party. And the rule, in such cases, is that it is to be presumed that it was the intent that both should participate, unless something to the contrary clearly appears in the case. *Lingham v. Eggleston*, 27 Mich. 331.

Besides this, among the recognized rules for the interpretation of contracts are the following: The circumstances under which the contract is made may be looked to in aid of its construction; and the acts of the parties to the instrument are entitled to great weight. *Gathwright v. Callaway county*, 10 Mo. 663; *Patterson v. Camden*, 25 Mo. 13. The evidence in this case shows that the lumber, which was on hand at the making of the contract, had been measured and scaled by both parties jointly; and it further shows that when the logs in question were ready for inspection on the river bank, before they were floated, the plaintiff notified the defendants of the fact, and requested them to come and make the measurement; and one of defendants did go, but refused to act. This clearly enough indicates

what was the understanding of the parties of this clause of the contract.

But does it follow, because the defendants refused to join in this matter, that they can now insist that their omission and wrong put an end to the contract? This participation in making the measurement was a mere right secured to the defendants by the contract for their protection. This right they might waive, and did waive. Benjamin on Sales (4th Ed.) 566-7, comprehends the whole law pertinent to this issue, as follows: "But the necessity of performing the condition precedent may be waived by the party in whose favor it is stipulated, either expressly or by the implication resulting from his acts or conduct. This waiver is implied in all cases in which the party entitled to exact performance either hinders or impedes the other party in fulfilling the condition, or incapacitates himself from performing his own promise, or absolutely refuses performance, so as to render it idle and useless for the other to fulfill the condition. No authority is needed, of course, for the proposition that the party in whose favor the condition has been imposed may expressly waive it. The cases are numerous, however, to establish the proposition above stated, in relation to implied waiver. If a man offer to perform a condition precedent in favor of another, and the latter refuses to accept the performance, or hinder, or prevent it, this is a waiver, and the latter's liability becomes fixed and absolute. * * * If the performance of a condition precedent by the plaintiff has been rendered impossible by the neglect or default of the defendant, it is equal to performance. On the same principle, a positive, absolute refusal by one party to carry out the contract, or his conduct in incapacitating himself from performing his promise, is in itself a complete breach of the contract on his part, and dispenses the other party, on his part, from the useless formality of tendering performance of the condition." See *Allix, Noyes & Co. v. Pelan et al.*, 5 Iowa 342. So our supreme court have uniformly held, that where one party is prevented by the wrongful act, or refusal, of the other party

from performing a condition precedent, or completing his contract, he is entitled to recover as on a contract fully performed. *Little v. Mercer*, 9 Mo. 218; *Pond v. Wyman*, 15 Mo. 176; *Nearns v. Horbert*, 25 Mo. 354.

3. The important, and really only practical, question affecting the merits of this controversy is, what is the proper measure of damages in such case? The jury have found necessarily, by their verdict, that the plaintiff has kept and performed the whole contract on his part. Unless, therefore, the court applied a wrong measure of damages, to defendants' prejudice, they ought not to complain. Courts have to deal with few questions of more complexity and perplexity, in their application to varying facts, than the rule for the ascertainment of the proper measure of damages on broken contracts. In the multitude of adjudications bearing on the rule, in a case like this, it would be a discouraging task to undertake to reconcile the conflicting views of eminent judges. The controversy seems to lie between the three following methods: First, whether the plaintiff, who is prevented from completing the contract by the refusal to perform of the other party in the case of a contract of sale of personal property, may go on and complete the contract on his part, and recover the contract price; or, second, whether he should treat the contract as ended, and retain the property as his own, and sue for the difference between the market value thereof and the contract price; or, third, sell the property at auction or at private sale for the best price he can command, and sue for the recovery of the difference between the price realized and the contract price. I am free to admit that the weight of authority seems to indicate a preference for the latter mode as the best means for the protection of the interests and equities of both parties. The object of the law is to attain as exact justice as is practicable between man and man. It, therefore, often results, in dealing with a question of this character, that the court must recognize the peculiar facts and circumstances surrounding each case as it arises. The character and situation of the subject matter of the property bargained for, as well as the

situation of the parties to the contract, must, at times, necessarily enter into and determine which one of the differing methods of exacting damages should be applied.

In the instance of perishable property, liable to quick decay, material waste or diminution by detention or transportation, common fairness and justice might well exact of the vendor, after notice from the vendee that he would not perform the contract or receive the goods, that he should not expose them to entire loss by abandoning them to the vendee, or exposing them to destruction by the shipment. And so, where the vendor, after notice or refusal to comply on the part of the vendee, is satisfied, reasonably, that a delivery at the designated point would be utterly unavailing, and that its abandonment there would manifestly involve its loss to the vendee, as where there would be no one to receive it, and would expose it to inevitable destruction, the vendor under such circumstances should take upon himself the office of bailee for the vendee, and protect the property by immediate sale or safe storage, according to the necessities of the case.

Benjamin on Sales (4th Ed.) sect. 788, seems to recognize the American doctrine to be that the vendor, in such case, has, ordinarily, a choice of either of the three remedies. Sedgwick on Damages Vol. I (7th Ed.) pp. 593, 596, after recognizing the right of the vendor to either retain the property as his own, and sue for the difference between the market value and the contract price, or to sell at auction or private sale, says : "But if the vendor does not pursue this course, and, without selling the goods, sues the vendee for his breach of contract, the question arises, which we have already stated, whether the vendor can recover the contract price, or only the difference between the price and the value of the goods which remain in the vendor's hands; and the rule appears to be that the vendor can recover the contract price in full." Parsons on Contracts, Vol. III (7th Ed.) pp. 209, 210, says : "He (the vendor) may consider them as his own, if there has been no delivery ; or he may consider them as the vendee's, and sell them, with due precaution to satisfy his lien on them for the price, and

then he may sue and recover only for the unpaid balance of the price; or he may consider them as the property of the vendee, subject to his call or order, and then he recovers the whole of the price which the vendee should pay. As the action in either case proceeds upon the breach of the contract by the vendee, it seems reasonable that this election should be given to the vendor, and no part of it to the vendee."

The authorities on this subject are ably reviewed by Gilmore, J., in *Shawhan v. Van Nest* (25 Ohio St. 490), in which the result reached is that the vendor has the unquestioned right to recover the contract price, as was permitted in the case at bar. This is affirmed in *Pallen v. Le Roy* (30 N. Y. 556); *Hunter v. Wetsell* (84 N. Y. 555). In *Crawford et al. v. Earl* (38 Wis. 312), the court says: "The plaintiff did all that the contract required to vest the title to the trees in the vendee defendant; and the cases in this and other courts, cited by counsel, abundantly prove that the contract price of the trees is the true measure of damages." The rule seems to have been repeatedly recognized by our supreme court, that where one party to the contract has been ready to perform, and has done all on his part required by the contract, and the only obstacle in the way of its complete fulfillment is the fault or refusal of the other party to permit its completion, the party without fault may recover the entire contract price. *Ingram v. Matthein*, 3 Mo. 211, where it is said the vendor may, if he chooses, abandon the goods at the risk of the vendee; *Pond v. Wyman*, 15 Mo. 183-4; *Steinberg v. Gibhardt*, 41 Mo. 520.

Without undertaking to lay down any general rule of inflexibility affecting this question, I am well satisfied that, under the circumstances of this case, no other basis of adjustment was admissible, in justice to the vendor, than that laid down in the instructions of the court.

The situation of the plaintiff in respect of the terms of his contract with defendants was somewhat peculiar. Notwithstanding the defendants waived their

right to participate in making the measurement of the logs before they were floated to the mills, yet, before the plaintiff had performed all that the contract imposed upon him, he must deliver the logs at defendants' mills. Until so delivered, they were at his risk. It was a question of grave embarrassment, and so any well-informed lawyer would have advised the plaintiff on consultation, whether he could entirely put the defendants in default until he had so delivered the logs, and allowed the defendants an opportunity to accept at the designated place of delivery. In Smoot's case (15 Wall. 37), this subject is considered by the supreme court of the United States. The doctrine is there laid down that nothing short of an absolute and unequivocal refusal to accept in the first place, acted on by the vendor, will excuse a tender of the property at the place of delivery, thus affording the vendee an opportunity, if not to recant, at least to comply. The case of *Avery v. Bowden* (2 Ellis & Blackburn 714), is cited. The contract there provided that plaintiff's vessel should be at Odessa, and lie for forty days, for the shipper to furnish the cargo. The vessel came within due time, and was advised by the shipper's agent that they had nothing for him, and that he had better go away. The vessel thereupon left. The unanimous opinion of the judges was that this conduct of the agent did not relieve the plaintiff from the obligation on his part to remain the forty days, and fully comply with his undertaking. Whether or not the conduct and declarations of the defendants, while the logs were upon the river, were of such a character as to amount to an absolute refusal to take the logs at any time or place, so as to excuse the further act of performance resting upon the plaintiff by the express terms of the contract, was, to say the least, not beyond doubt. The view made of the logs by defendants, when up the river, was quite superficial, and only of a part. Had the plaintiff stopped there, he might have been met by defendants on this trial with the defence : You did not perform all the contract exacted of you. You were to deliver the logs at our mills. This you did not do, and

we deny that we did more than to say we would not receive unmerchantable logs. We have always been ready to receive logs which are merchantable, according to contract. This is what defendants now say; and this brings the case within the principle maintained by the supreme court of the United States in Smoot's case, where the court say the vendor should make tender at the place of delivery. And what is more persuasive of the correctness of our conclusion in this respect, is the legal proposition that before the plaintiff could even have availed himself of the right to sell the logs, after defendants' refusal to receive, he must have taken them to the place of delivery designated in the contract, as that was the proper point for establishing their market value. *Rickey v. Tenbroek*, 63 Mo. 567.

When he did so deliver them, the defendants declined to receive them. The plaintiff then did, according to his evidence, the best thing he could for defendants by selling as many of them as he could find a buyer for, and then abandoning the residue to defendants at the place of delivery. What else could he do? Of what value, then, was this timber to plaintiff? The courts all recognize the right of the vendor who has furnished material for the manufacture of a given article for another, as in the case of machinery, carriages, instruments, and the like, to recover the contract price, where the party refuses to receive them. *Gordon v. Norris et al.*, 49 N. H. 376. I can discover no substantial difference in the facts of this case. The plaintiff, in reliance upon defendants' promise and contract, went to work and felled his trees, prepared, scaled and fitted them for conversion into saw-logs, and floated them to the mills. They, perhaps, had no other market value—no adaptation to other purpose. We hold that common sense and justice alike demand that the defendants should not be heard to deny the plaintiff's right, who is without fault, to demand his contract money.

4. It was not essential that the logs sold by plaintiff should have been sold at public auction, or after notice

to defendants. Benj. on Sales, p. 901, note *e*; 1 Sedg. on Dam. 594; *Ingram v. Matthein*, 3 Mo. 209.

5. Counsel for defendants, on the trial, sought to make inquiry of the witnesses of the market value of the logs. They contend that they should have been permitted to do this, because some of the logs were retained by the plaintiff. An examination of the evidence does not sustain this fact. It is manifest that plaintiff did not retain any of the lumber. And if he had, the question was too broad, for it applied to all the logs, and did not properly fix the point for ascertaining such value.

6. Complaint is made of the following instruction given by the court: "The jury are instructed that in determining whether the logs were merchantable, as stated and defined in the contract, they will take into consideration the different kinds of timber specified, the fact that they were to be rafted and delivered on Grand river, and all the other facts and circumstances in evidence, and if the logs tendered by plaintiff were a good, average lot of sound logs, suitable for sawing into lumber, and of the kinds and quantities specified in the contract, the said logs were merchantable."

We do not conceive that this instruction, when taken in connection with others, and as applied to the facts of this case, was hurtful to the defendants. In determining whether property like this is merchantable, regard must be had to the quantity and purposes for which it is to be used, or the market for which it is designed.

*Cullen v. Bimm* (37 Ohio St. 236) was the case of a contract for a large quantity of ice. The court say: "In determining whether property like this is merchantable, some regard must be had to quantity. The rule upon the subject may be illustrated by a familiar example. If A sells to B six sound apples, the tender of six apples, one of which, to any extent, is unsound, may not be compliance with the contract; but where the sale is of a barrel of sound apples, the tender of a barrel of apples might be a compliance with the terms of the contract, although one

apple in the barrel might be to some extent unsound. Large lots of ice entirely free from impurities perhaps can not be found."

The instruction in question does speak of a "good, average lot of logs," but the further requirement is that they must be "sound logs, suitable for sawing into lumber, and of the kinds and quantities specified in the contract."

Other matters are complained of by plaintiffs in error, but they do not command review. They are unimportant, and do not affect the merits. We think the case was fairly tried, and the verdict well supported by the evidence.

Let the judgment be affirmed. All concur.