DICK BROS. QUINCY BREWING COMPANY, Appellant, v. J. FINNELL *et al.*, Respondents.

Kansas City Court of Appeals, February 17, 1890.

1. **Contracts:** EVIDENCE TO VARY: ERRONEOUS INSTRUCTIONS: CON-SIDERATION.   In an action on a bond which defendants had given plaintiff to secure performance of a contract for the sale of beer and the prompt remittance of money due plaintiff, by the principal in the bond, it is error to admit evidence to the effect that at the time of executing the bond the plaintiff's agent had promised to inform the sureties if the principal should default in paying for any carload of beer; as such evidence tends to vary the terms of the written contract, and an instruction based on such evidence is error.   If such promise was made after signing and delivering of the contract, it is a mere voluntary engagement without any consideration.

2. **Payment:** TWO ACCOUNTS: SAME DEBTOR: DIFFERENT DEBTORS. The rule that, when the debtor owes two accounts and gives no directions as to the application of payments, the creditor can apply such payments to either account has no application, where the creditor claims that the account, prior to a certain date, was made by one man, and, after that date, by another.

Dick Bros. Quincy Brewing Co. v. Finnell.

3. **Credited to What Account: QUESTION OF INTENTION FOR THE JURY.** Where F., the principal in a bond for the performance of a contract and the prompt remittance of money, made default, and plaintiff ceased to do business with him on March 4, and, thereupon, his sureties and one W. effected an arrangement with plaintiff to take charge of the business, the question whether remittances made by said W., after March 4, should be applied to the account of F. prior to that date, or to the account of W. subsequent to that date, is for the jury, under the instructions of the court; and, though W. and the sureties were conducting the business on their own account, yet, if it was with an understanding and agreement between all concerned that payments made by them should go to reduce F.'s indebtedness, then such payment should be applied to that account.

4. **Trial Practice: DUTY OF COURT TO CONSTRUE CONTRACT : RULE OF INTERPRETATION.** It is the duty of the court to construe and declare to the jury the meaning of written contracts. It is an established rule for the interpretation of contracts that the circumstances under which the contract was made may be looked at to aid in its construction; and the acts of the parties to the instrument are entitled to great weight.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

*Kimball & January,* for the appellant.

(1) Parol evidence will not be received for the purpose of engrafting additional stipulations or conditions upon a written contract which is complete in itself. *Pearson v. Carson,* 69 Mo. 550; *Hair Co. v. Walmsley,* 32 Mo. App. 115. (2) The debtor has the first right to apply payments, and, if he does not exercise the right, the creditor may make the application to any indebtedness he may choose. *Poulson v. Collier,* 18 Mo. App. 583. (3) It is the duty of the court to construe a written contract, and to tell the jury what it means. The question of freight was settled by the letter of July 31, also rents and all incidental expenses.

*Burton & Wight*, for the respondents.

(1) There was testimony tending to show the subsequent contract, set out in the separate answer of Wilson and Nipp. Being subsequent, it was not merged in the bond. It had a consideration, hence the court did not err in admitting the testimony proving it, nor in giving instruction number 12. (2) The contract, as evidenced by the letter of July 31, 1886, is not either clear or complete on the' matter of the payment of freight. Evidence is admissible to explain it. Where parties, by their own action, construe a contract which is not clear, the courts will follow the construction put upon it by the parties, or, at least, their actions are entitled to great weight. *Dobbins v. Edmonds*, 18 Mo. App. 307; *Goldman v. Wolf*, 6 Mo. App. 49. (3) The rent of the icehouse was not contemplated at the time plaintiff wrote the letter of July 31, 1886, and the term "rents," as therein used, does not cover the icehouse. That was a subsequent matter, and the icehouse was rented by Winters for plaintiff, on the idea that it was for the benefit of his principals. Plaintiff paid for fixing it one hundred and twenty dollars. *Dobbins v. Edmonds*, 18 Mo. App. 307; *Goldman v. Wolf*, 6 Mo. App. 490. (4) Defendant was entitled to a credit for all payments made upon his account by and for him.

GILL, J.—The facts of the case, which are necessary to be here stated, are about these: Dick Bros. Brewing Company, manufacturers of beer, etc., at Quincy, Illinois, made an arrangement by letter of July 31, 1886 ( which contained the terms of a contract ), with defendant Finnell for the sale of their beer at Nevada, Missouri. By the terms of the contract Finnell was to sell only the beer of Dick Bros., was to "guarantee the payment of all beer sold, and make prompt remittances

for all such sales. All expenses to carry on the agency for the sale of the beer, the sales, collections, rents, traveling expenses and all other expenses incident thereto" to be borne by said Finnell. The said agent's commission, or compensation, to be such amounts as he might receive for such sales as exceeded the prices at which the goods should be invoiced to said Finnell. The prices at which the beer would be invoiced to the agent are named in the contract. To secure Finnell's performance and prompt remittance of money due to Dick Bros., the said Finnell with defendants, Nipp and Wilson, as sureties entered into bonds to Dick Bros. in the sum of fifteen hundred dollars.

Plaintiff furnished beer to Finnell under the contract thus made until the fourth of March, 1887, when Finnell was in debt to appellants as they claim in the sum of $2,010.18. At that time Dick Bros. refused to honor Finnell's orders for beer. Soon afterwards an arrangement was entered into between Captain Winters, plaintiff's agent, and defendants, Nipp and Wilson, by which one William Fletcher was to take charge of the business here, or, at least, handle the money; and, on order signed by Nipp and Fletcher, plaintiff furnished more beer until the business thus conducted ran behind over six hundred dollars, when shipments ceased and business in Nevada came to an end.

Failing to get a settlement, Dick Bros. brought two suits, one against Nipp and Fletcher on the balance of indebtedness, accruing after March 4, 1887, and this suit on the bond of Finnell and his securities, Nipp and Wilson, for the indebtedness accruing prior to said date. At the trial of this cause plaintiff recovered judgment for six hundred and ten dollars, and its motion for new trial being overruled has brought the case by appeal to this court.

I. Of the errors complained of by the plaintiff, the giving the defendants' instruction numbered 12 and

admission of evidence leading thereto are sufficiently erroneous and harmful as to call for a reversal of this cause. Said instruction reads as follows :

Number 12. "If the jury believe from the evidence that it was understood and agreed by and between Captain Winters, as agent for the plaintiff, and defendants, Nipp and Wilson, after the signing of the bond sued upon, that in case defendant Finnell should neglect to pay plaintiff for any carload of beer when the same became due or within a reasonable time thereafter, that the said defendants, Wilson and Nipp, were to be notified ·of such neglect to pay, and that said Finnell was not to receive from plaintiff any more beer until he had settled for what he should then owe; and the plaintiff continued to ship beer to defendant Finnell, and increase his indebtedness to them, without the consent of Nipp and Wilson and after Finnell was so in arrears, then you are instructed that you cannot find for plaintiff for any beer so shipped."

This instruction was based on certain evidence, introduced at the trial by the defendants, and admitted over plaintiffs' objections to the effect, as testified to by defendant Wilson, that at the time the bond was signed by said Wilson and Nipp, plaintiffs' agent, Winters, promised to inform said sureties if Finnell should default in paying for any carload of beer. Winters denied any such agreement. The admission of this testimony—as well as the giving to the jury the foregoing instruction—was clearly a violation of the rule that excludes all cotemporaneous parol agreements tending to vary, add to or contradict the terms of the written contract, then and there entered· into between the parties. *Hair Co. v. Walmsley*, 32 Mo. App. 115.

And, if said promise was made even *subsequent* to the signing and delivery of the contract and bond, it was clearly without any consideration a mere voluntary engagement by Winters to keep the defendant sureties posted as to Finnell's account with plaintiff.

II. The plaintiff further complains of the court's refusal to give its instruction number 3 to the effect, that, "if defendant Finnell made payments to plaintiff after March 4, 1887, and did not direct where they should be applied, then plaintiff had the right to credit such payments, if any, to the indebtedness accruing after March 4," etc. This contention arises out of these facts brought out at the trial, to-wit: It seems that while the business was being conducted by Fletcher and Nipp after March 4, 1887, Fletcher from time to time made certain remittances to plaintiff aggregating five hundred and seventy-five dollars. Plaintiff seeks to credit these payments, so made after March 4, to the account of goods furnished after March 4, on the order of said Fletcher and Nipp, while *defendants* insist that such payments are properly to be applied on the old account for beer sold to Finnell *prior* to March 4.

Now, upon the facts as alleged and claimed by *Dick Bros.*, there is no place here for the application of the rule announced in its instruction number 3 above quoted from. That rule presupposes a debtor on two separate accounts, and, the debtor failing to designate the account to be credited, the right rests with the creditor to name the demand to receive the benefit of the payment. But this plaintiff only charges Finnell with the *one* debt—the one account—and that for the goods furnished him *prior* to March 4, 1887. It claims the goods furnished after March 4 were sold *not* to Finnell, but to Nipp and Fletcher, and seeks by suit to enforce payment from them. If the beer furnished after March 4 constituted a sale to Fletcher and Nipp, then it is equally certain that Finnell was not the purchaser of these goods.

As to what account these payments, made after March 4, should go, as a credit, whether they should be regarded and treated as payments for or on account of beer sold before or after March 4, must be determined

by the jury under proper instructions. If the purchases made *after* March 4, 1887, were those of Nipp and Fletcher, and on their account, then payments made by them during the conduct of the business are presumed to be on account of such purchases. Again, though Nipp and Fletcher were conducting the business on their own account and buying the said goods on their own credit, yet if it was with an understanding and agreement between all concerned that payments made by them should go to reduce and liquidate Finnell's indebtedness accruing before March 4, then such payments should be applied to the credit of that account.

It may be well to remind the trial court that it is the duty of the court to construe and declare to the jury the meaning of written contracts. So it is a well-established rule for the interpretation of contracts "that the circumstances under which the contract was made may be looked to in aid of its construction; and the acts of the parties to the instrument are entitled to great weight." · 18 Mo. App. 315.

These remarks are suggested by reference to instructions numbered 6, 8 and 11 which seem to submit to the *jury* the extent of the contractual obligations of the parties to the written contracts in evidence.

The judgment of the circuit court is reversed and the cause remanded for a new trial. All concur.