Anderson v. Frank.

G. W. ANDERSON, Respondent, v. LEOPOLD FRANK.
*et al.*, Appellants.

St. Louis Court of Appeals, May 19, 1891.

1. **Sales: MEASURE OF DAMAGES.** If the vendee of personalty wrongfully refuses to accept it, and there is no market therefor at the place of delivery designated by the contract, and the vendor, after notice to the vendee, sells the property to the best advantage at the nearest and most available market, he is entitled to recover from the vendee the difference between the contract price and the net proceeds of the resale.

2. ———— : ———— : **PLACE OF RESALE.** In this cause it appeared that there were two markets for the personalty, the one nearer to the place of delivery being a limited one, while the other was the more convenient and was the controlling market for the subject-matter of sale, and was, moreover, the market for which the personalty had been intended by the purchaser ; and it was *held* that the resale was properly made at the latter place.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Chas. P. & J. D. Johnson,* for appellants.

(1) The trial court erred in giving the fourth instruction given on its own motion. The third paragraph of that instruction improperly submitted to the jury, as a question of fact, whether there was a market for wool at Latham, Kansas, when the question was not raised by the pleadings. It also improperly submitted to the jury, whether there was such a market at St. Louis, Missouri, and whether the St. Louis market was the most convenient and available market for plaintiff for the sale of his wool. It improperly declared the measure of damages in the case to be the difference between the contract price and the net amount realized

for the wool at the sale thereof at St. Louis. The correct measure of damages in the case is the difference between the price contracted to be paid by the defendants and the price the wool was worth on the market at the time and place the same was to be delivered; and, if it had no such established market value, then the measure of damages is the difference between the contract price and the price realized for it when sold at the town of Latham at public or private sale. *Rickey v. Tenbroek*, 63 Mo. 565; *Kingsland v. St. Louis*, 29 Mo. App. 540; *Northrup v. Cook*, 39 Mo. 210; *Van Horn v. Rucker*, 33 Mo. 392; *Black v. Warner*, 93 Mo. 386. As the contract was made and was to be performed in the state of Kansas, the law of that state should control, as to its construction and the measure of damages for a breach thereof. The rule there is substantially the same as it is in Missouri. *Field v. Kinnear*, 4 Kan. 479; *Stewart v. Powers*, 12 Kan. 598; *Gray v. Hall*, 29 Kan. 704.

*R. H. Kern*, for respondent.

, BIGGS, J.—The plaintiff is the owner of a sheep ranch in the state of Kansas. The defendants do business in the city of St. Louis under the name of Frank & Hellendall, and are engaged in the wool business. On the twentieth day of May, 1890, the parties entered into the following contract:

"LATHAM, KANSAS, May 20, 1890.

"Bought to-day, the twentieth of May, 1890, from G. W. Anderson, his clip of wool of about four thousand fleeces, at eighteen (18) cents per pound. Wool to be delivered whenever done shearing at Latham, Kansas (station). Have given on above-named clip the amount of three hundred dollars ($300). Wool to be free of scab and burrs."

The plaintiff finished the shearing and delivery of the wool at Latham on the sixth day of July. On the

fifth day of July he sent the following telegram to the defendants at St. Louis :

"Will deliver wool on Monday, seventh. Hurry up agent."

In answer to this dispatch the defendants sent the following:

"Cannot accept your wool, not being as represented, Have written."

About a week after this correspondence was had. the plaintiff shipped the wool to a firm of commission merchants in the city of St. Louis, and, after notice to the defendants, it was sold on their account. The present action is prosecuted to recover the difference between the value of the wool as per contract price, and the net amount realized from the sale in St. Louis. The cause was submitted to a jury, and the trial resulted in a verdict for $2,115.88. Pending the motion for new trial the plaintiff remitted the sum of $394.23, and the court entered a judgment for $1,721.65. From that judgment the defendants have appealed.

The only question argued by the defendants' counsel pertains to the court's instruction as to the measure of the plaintiff's damage, and the means which the law authorized him to adopt to determine the amount of such damage. On this subject the court instructed as follows : "The court instructs the jury that it is admitted in these cases that Frank and Hellendall contracted to pay eighteen cents per pound for the wool in question, delivered at Latham, Kansas, and that they refused to receive the same.

"And you are further instructed that, if you find from the evidence that the wool was free from scab and burrs, and that it did not contain more of tags, sweat locks or sheep dung, than wool of like grade and quality usually does when sold in the market, then you should find a verdict in favor of plaintiff Anderson, on his cause of action in the case of Anderson v. Frank

& Hellendall, and assess his damages at nominal damages at least.

"And if you further find from the evidence that there was no market at the time for the wool in question at Latham, Kansas, and that there was such market at St. Louis, Missouri, and that such market was the most convenient and available to said Anderson for the sale of said wool at that time, and that said plaintiff Anderson shipped to, and sold said wool at, said market at the least cost possible for the highest price attainable, after having notified said Frank & Hellendall that he would sell same at their account, then you will assess plaintiff Anderson's damages at such a sum as you find from the evidence is equal to the difference between the value of said wool at eighteen cents per pound, and the net amount realized therefor by said Anderson, together with six per cent. per annum thereon since the third of September, 1890."

Before we proceed to the discussion of this instruction, we must refer briefly to the evidence. The plaintiff's evidence tended to prove that Latham was a small village or station on the railroad; that there were no wool buyers there, and that it had no market for wool; that St. Louis controlled the wool market of Kansas, and that it was the most convenient and available market for Kansas wool; that, when the defendants refused to accept the wool, the plaintiff within a week or ten days shipped it to a firm of commission merchants in the city of St. Louis, where it was sold for its full market value, after notice had been given to the defendants of the intended sale. There was some evidence to the effect, that Kansas City was a nearer market than St. Louis, but that it was a more limited one. However, there was no evidence tending to prove the value of such wool in that or in any other more convenient market at or about the time the wool was to be delivered.

The defendants' position is, that the correct and only measure of the plaintiff's damages under the evidence is the difference between the contract price of the wool, and its market price at Latham, Kansas, at, or within a reasonable time after, the date of delivery. This is undoubtedly a correct statement of the general rule, but the question in controversy here is, how was the market price of the wool at Latham to be determined. When the defendants refused to accept the wool the plaintiff had two courses open to him. The law permitted him either to store the wool at the place of delivery, and sue the defendants for the entire contract price, or to sell it in the market for the best price obtainable, and sue for the difference between the contract price and the net amount realized, which is to be taken as the market price. *Ingram v. Matthien*, 3 Mo. 209; *Dobbins v. Edmonds*, 18 Mo. App. 307; *Van Horn v. Rucker*, 33 Mo. 391; *Sands v. Lovett*, 5 John. 395. The plaintiff adopted the latter course, which is the safer and better one, as it was more likely to preserve the interests and equities of both parties.

The only question in this case is, was the plaintiff compelled under the law to sell the property at the place of delivery, whether there was any market at that place or not. The defendants hold to the affirmative of this proposition, and contend that the result of a sale at Latham was the only competent evidence of the plaintiff's damage, and that, if there was no market there, it was the duty of the plaintiff to make one by selling the wool either at public or private sale. We cannot agree to this. If there were no wool buyers at Latham, and the record so shows, a sale there would likely have resulted in a ruinous sacrifice, and the result of such a sale would not have furnished a fair and just measure of the plaintiff's damage. The general rule that such a sale must be made at the place of delivery is not an inflexible one by any means. If the place of delivery affords no market for the article sold, it is the

duty of the vendor to send the goods to the nearest and most available market, and there dispose of them in such a way as to produce the largest possible results. Mr. Teideman in his work on sales ( section 334 ), in treating of this question, says : " All that is generally required of the seller, in his conduct of the resale, is that he shall in all his arrangements for the resale reasonably consider the interests of the buyer by securing the largest price possible for the goods. The sale need not necessarily be held in the place of delivery ; but it must ordinarily be held in some convenient and neighboring market."

It seems to us that the plaintiff adopted the only sensible and reasonable course. If the defendants had accepted the wool, they would doubtless have shipped it to St. Louis, for it was their home, and it was the controlling market for wool grown in Kansas. Kansas City afforded a nearer market, but it was not so extensive as the St. Louis market, and hence was not so available. A sale on the St. Louis market would fur· nish better evidence of the value of the wool at Latham, than if the sale had been made at Kansas City. At least that is a fair inference to be drawn from the evidence as shown by the record.

It is insisted, however, that this view of the law is opposed to the decision of the supreme court in the case of *Rickey v. Tenbroeck*, 63 Mo. 563. In this we think counsel are mistaken. An extract from the opinion in that case will show this. Rickey, the plaintiff, testified that, at the time the defendants refused to receive the cattle, the market for such cattle had declined one half cent per pound. Instead of selling the cattle at the place and time of delivery, the plaintiffs kept them for about a month, and then shipped them and sold them on a distant market, and undertook to hold the defendants for the entire difference between the contract price and the amount realized from such

sale. The court said : "The plaintiff's evidence certainly fixes a more just rule of damages in this case, when he establishes the value of the cattle at the time the breach took place, than is laid down in the instructions of the court, which virtually prohibited the jury from considering this fact, and required of them to take the price obtained for them in Chicago, a foreign market, at a sale made about a month after the breach, as conclusive evidence of the value of the cattle at the time of the breach." The case we have here is essentially different in its facts. There was no market for the wool at Latham, and the plaintiff could only ascertain its market value there by selling it on the nearest and most available market.

The instruction, however, is technically inaccurate, in so far as it made the sale of the wool on the St. Louis market conclusive as to the measure of the plaintiff's damage, whereas it was only evidentiary of the extent of the plaintiff's damages. As the defendants gave no evidence whatever showing or tending to show that they were in any way prejudiced by the instruction, and gave no evidence showing or tending to show a more accurate method of determining the difference between the contract price and the value of the wool, we ought not to disturb the verdict on account of this defect in the instruction, which, under the facts, is purely technical.

The claim made by the defendants, that the judgment under any theory of the evidence is excessive, is not well founded. The plaintiff's evidence authorized a finding for $1,728, which amount is a few dollars in excess of the judgment.

Finding no error in the record, the judgment of the circuit court will be affirmed. It is so ordered. All the judges concur.