## J. E. STEWART PRODUCE COMPANY, Appellant, v. GAMBLE ROBINSON COMMISSION COMPANY, Respondent.

### St. Louis Court of Appeals, April 6, 1915.

1. **TRIAL PRACTICE: Verdict: Effect.** A verdict resolves all disputed questions in favor of the successful party.

2. **SALES: Breach of Contract: Remedies of Vendor.** When a vendee breaches a contract of sale and refuses to accept the property contracted for, the vendor may either store or retain the property for the vendee and sue for the entire contract price, or he may keep the property as his own and recover the difference between the market price, at the time and place of delivery, and the contract price, or he may resell the property, acting as the vendee's agent and taking requisite steps to protect the vendee's interest, and recover the difference between the contract price and the price obtained at such resale.

3. ——: ——: **Measure of Damages.** The rules relating to the measure of damages for the breach of a contract to sell personalty are not absolutely inflexible and must be applied with regard to the facts and circumstances surrounding the particular case, but the aim of the law in such cases is compensation, to be secured in a practical way to the party damaged by the breach.

4. ——: ——: **Remedies of Vendor: Measure of Damages.** Where a vendee breaches a contract of sale and refuses to accept the goods contracted for, and the vendor, after due notice to the vendee, sells the goods for the best price obtainable, the vendor's damages are properly assessed at the difference between the contract price and the price obtained at the resale, although the latter is less than the market quotations on the goods.

5. **DAMAGES: Measure of Damages: Instructions: Harmless Error.** Where the instruction on the measure of damages does not in terms direct the jury to assess damages according to the correct theory, but it is evident, under the evidence, that the jury assessed the damages on the correct theory, it is error for the trial court to set aside the verdict on the ground that the jury awarded damages contrary to such instruction.

6. **SALES: Breach of Contract by Vendee: Sufficiency of Evidence.** In an action against a vendee for refusing to accept goods consigned to him under a contract of sale, evidence *held* sufficient to warrant a verdict for plaintiff.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED (*with directions*).

*Frank A. Thompson* for appellant.

(1) When plaintiff shipped to defendant, at Minneapolis, a carload of potatoes such as the contract called for (and the jury so found), when said car was refused plaintiff had three methods of indemnifying itself: First, it could have stored the potatoes for the defendant and sued for the entire purchase price; second, it could sell the potatoes and recover from the defendant the difference between the contract price and the net price obtained on such a sale (which it did); third, it could have kept the property and recovered the difference between the market price and the contract price at the time and place of delivery. Ozark Lumber Co. v. Chicago Lumber Co., 51 Mo. App. 555; Field on Damages, sec. 299; 2 Sedgwick on Damages (8 Ed.), sec. 750; 3 Parson on Contracts, page 208; Story on Sales, sec. 403; Dobbins v. Edmonds, 18 Mo. App. 307; Anderson v. Frank, 45 Mo. App. 486; Barrie v. Seidel, 30 Mo. App. 559; Crown Vinegar Co. v. Wehrs, 59 Mo. App. 493; Stempf v. Mueller, 17 Mo. App. 283. (2) When plaintiff shipped the car of potatoes in accordance with the contract (and the jury so found) the title to the potatoes passed immediately upon shipment and hence plaintiff could have recovered the full contract price. Bloom's Sons Co. v. Haas, 130 Mo. App. 122; Sharff v. Meyer, 133 Mo. 428; Meyer Bros. Drug Co. v. Mason McMahon, 50 Mo. App. 18; Third Nat'l Bank v. Smith, 107 Mo. App. 178; State v. Rosenberger, 212 Mo. 654. (3) The instructions on the measure of damages was not entirely wrong, but even if it were it would make no difference, as the verdict was the only one it could be and was simply the result

of a mathematical calculation, about the elements of which there was no dispute or contention. Heil v. Railroad Co., 16 Mo. App. 363. (4) The verdict was exactly proper to the cent. It could not have been anything else.

*H. M. Wilcox* and *G. H. Ten Broek* for respondent.

ALLEN, J.—This is an action for the alleged breach by defendant of a contract for the sale by plaintiff to defendant of a carload of potatoes. There was a verdict below for plaintiff, but the court, on defendant's motion, set it aside and granted a new trial on the ground that the jury had awarded damages in a sum not warranted by the evidence and contrary to the court's instruction relative to the measure of damages. From the order granting a new trial plaintiff prosecutes this appeal.

Plaintiff is a corporation engaged in the wholesale produce business in the city of St. Louis, and defendant is a corporation engaged in a like business in Minneapolis, Minnesota. On June 20, 1911, a contract was entered into between plaintiff and defendant, by exchange of telegrams, for the sale by plaintiff to defendant of a carload of potatoes known as Oklahoma Triumphs. The contract was made at plaintiff's solicitation, several telegrams passing between the parties on the same day. Plaintiff quoted "Triumphs" at $2.05 per bushel "f. o. b. St. Louis," provided defendant would agree to accept the potatoes on arrival at Minneapolis without complaint, plaintiff stating that the crop was short and that there was a demand for more than could be obtained at this price. However, in a later telegram plaintiff stated that the potatoes were "Oklahoma stock, quality good, but only medium size;" and defendant thereupon telegraphed plaintiff to ship the car "if dry stock, quality as described."

The carload of potatoes arrived at Minneapolis on June 25, and on the following day defendant, by telegram, rejected them as being of "very poor quality, extremely small, soft and wet." Further telegrams passed between the parties to which it is here unnecessary to refer. Plaintiff insisted that the potatoes shipped were in accordance with the contract; and after having notified defendant thereof, arranged with another commission company in Minneapolis to sell them for defendant's account. They were so sold, not as a carload lot, but in smaller quantities, to different purchasers, during a period extending from June 28 to perhaps July 18, 1911.

The evidence discloses that the contract price amounted to $881.15. The potatoes were resold, in the manner above stated, for the gross sum of $577.80. The freight and selling charges amounted to $103.98, leaving $473.82 as the net amount realized, which latter sum was remitted to plaintiff. The verdict of the jury was for $407.33, being the contract price of $881.15, less $473.82, the amount received by plaintiff as the net proceeds of the resale.

There is a sharp conflict in the evidence as to the size of the potatoes, this being the only question of fact concerning which any serious doubt may be entertained. Plaintiff's evidence, consisting in part of the testimony of inspectors who had examined the contents of the car for a company that had originally purchased the potatoes in Oklahoma and sold them to plaintiff, was to the effect that the potatoes were sound Oklahoma Triumphs of "medium size." Defendant's evidence on the other hand, went to show that they were too small to be classed as medium in size, and so small as to be practically unmerchantable. Such, in effect, was the testimony of a Mr. Lucas who acted for the company that resold the potatoes, and who stated, in substance, that though the quality was good, he was

189M.A.42

unable to sell them as a carload lot, or for the market price of medium potatoes, because they were so small; and that he obtained the best price possible under the circumstances.

However the jury, by their verdict in plaintiff's favor, have found that the potatoes were in fact of medium size, as called for by the contract; and this is now to be regarded as an established fact in the case.

In general, when a vendee has breached a contract of sale and refused to accept the goods contracted for, the vendor has his choice of the following remedies, viz.: (1) He may store or retain the property for the vendee, and sue for the entire contract price; (2) he may keep the property as his own, and recover the difference between the market price, at the time and place of delivery, and the contract price; (3) or he may resell the property, acting as the vendee's agent and taking requisite steps to protect the vendee's interest, and recover the difference between the contract price and the price obtained by such resale. [See Dobbins v. Edmonds, 18 Mo. App. 307; Ozark Lumber Co. v. Chicago Lumber Co., 51 Mo. App. 551; St. Louis Range Co. v. Mercantile Co., 120 Mo. App. 438, 96 S. W. 1040; Koenig v. Boat Mfg. Co., 155 Mo. App. 685, 135 S. W. 514; Oehler v. Fruit Co., 162 Mo. App. 446, 142 S. W. 811.]

Plaintiff here adopted the third of the above-mentioned remedies. That is to say plaintiff, with notice to the defendant, caused the property to be sold for the best price obtainable therefor, deducted the net proceeds of such resale from the contract price and brought suit for the remainder of the contract price, as being the damages entailed by the breach. And the verdict of the jury is precisely this difference between the contract price and the net proceeds of the resale.

The court, of its own motion, instructed the jury that if they found for plaintiff their verdict should be for the difference between the contract price and the

"value of said potatoes" at Minneapolis at the time of their arrival there, less the freight and reasonable selling charges. The court, in sustaining the motion for a new trial, in a memorandum filed, stated that this instruction told the jury that if they found that the potatoes were of medium size "they should award as damages to plaintiff the difference between the contract price and the market price on June 28th of *such medium-sized potatoes*" (italics ours); that the jury had not done this, but had allowed plaintiff the difference between the contract price and the price obtained by selling them, according to the testimony of Lucas, "not as medium-sized potatoes," and "in small lots" during the period above mentioned.

But we are of the opinion that the verdict should have been allowed to stand. In a case of this character, it is unquestionably the law that where the vendor, in good faith, and upon notice to the vendee so that the latter may protect his interests, resells the property, at the best price obtainable therefor, he may recover the difference between the proceeds of the resale and the original contract price. It is frequently said that the price brought at the resale is to be regarded as determining the market value of the property. [See Rickey v. Tenbroeck, 63 Mo. 563; Black River Lumber Co. v. Warner, 93 Mo. l. c. 586, 6 S. W. 210; Anderson v. Frank, 45 Mo. App. 482; Anderson Carriage Co. v. Gilmore, 123 Mo. App. 19, 99 S. W. 766.] But however this may be, it is clear that the vendor is entitled to pursue this course if he sees fit, and thus make himself whole, though the property may bring at the resale less than what appears to be the market value thereof. But on the other hand it is held that if no notice of the intended resale is given to the vendee, he is not precluded thereby; and if the property sells for less than the market value, the vendor's damages will be the difference between the contract price and the market value at the time and place

agreed upon for delivery. [See Nelson v. Hirsch & Sons Co., 102 Mo. App. l. c. 515, 77 S. W. 590; Black River Lumber Co. v. Warner, supra.]

It is true that the rules relative to the measure of damages for breach of contract to sell personalty are not absolutely inflexible, and must be applied with regard to the facts and circumstances surrounding the particular case. [See Campbell v. Woods, 122 Mo. App. l. c. 725, 99 S. W. 468.] But the aim of the law in such cases is compensation, to be secured in a practical way to the party damaged by the breach. [Crown Vinegar & Spice Co. v. Whears, 59 Mo. App. l. c. 496.] "The object of the law is to place the party in the same condition that he would have been if the contract had been performed." [Black River Lumber Co. v. Warner, supra, l. c. 390.] In this case it is quite evident that if plaintiff shipped potatoes of the requisite character, and if it was defendant that breached the contract, as the jury found, then plaintiff can be made whole only by an award of damages equal in amount to the verdict below. Nothing less than this would be compensation, as the matter now stands; and, as indicated above, the course pursued by plaintiff is one which the law sanctions.

The learned trial judge was of the opinion that if the jury found that the potatoes were of medium size, plaintiff's damages were to be measured with reference to the market value of potatoes of that character, appearing from testimony adduced in defendant's behalf. While this is in accord with the evident theory underlying the rule permitting the vendor to fix the amount of his loss by a resale properly made, it fails to reckon with the more practical aspect of the remedy thus afforded.

It is true that when the potatoes are found to have been such as were called for by the contract, they are to be so regarded for all purposes in the case. However, the jury were not bound to accept the testimony

to the effect that the potatoes could not be sold in a carload lot, as medium sized potatoes, or for the market price of such potatoes, but were at liberty to reject this testimony and to find that the price realized at the resale resulted from other causes. The only testimony as to the market value of medium-sized potatoes of this character was that of the president of defendant company, and though it is to the effect that the market quotations on such potatoes at Minneapolis, at and about the time in question, were much higher than the average price said to have been realized at the resale, it shows too that the market quotations began to decline on June 28, and continued to do so, without showing what market quotations prevailed later than June 30. The potatoes were not fully disposed of until July 18. They were sold, however, within a reasonable time. Though they brought a low price, the jury were at liberty to take into consideration the fact that where property is thus shipped a great distance the seller is likely to be at a great disadvantage in disposing of it, in case it is rejected by the buyer, together with the aforesaid decline in the market quotations, as factors to be reckoned with in this connection.

All of these things were matters to be considered by the jury in passing judgment upon the disputed question whether or not the potatoes complied with the contract. With this determined in plaintiff's favor, and it appearing that the property had been resold, after due notice to defendant, for the best price obtainable therefor, plaintiff's damages were properly assessable at the difference between the contract price and the price obtained at the resale—though the latter was less than real market quotations upon such potatoes as these were thus necessarily found to be.

Under the circumstances it matters not that the instruction on the measure of damages did not in terms

tell the jury to thus assess the damages; for this is precisely what the jury did.

Appellant suggests that the new trial might properly have been granted on the ground that the demurrer to the evidence should have been sustained. But it is clear that the case was one for the jury and the court's action appealed from may not be sustained on this ground.

It follows that the order granting a new trial should be reversed, and the cause remanded with directions to reinstate the motion for a new trial, overrule it, and enter judgment for plaintiff on the verdict. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.