A. J. CRAWFORD, RESPONDENT, v. GEORGE F. DAHLENBERG, DOING BUSINESS AS ST. JOSEPH WOOL COMPANY, APPELLANT.*

Kansas City Court of Appeals.   May 3, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 764, n. 80; p. 858, n. 3; Corporations, 14aCJ, p. 1111, n. 63; Frauds, Statute of, 27CJ, p. 260, n. 55; p. 264, n. 96; p. 301, n. 12; Sales, 35Cyc, p. 86, n. 26; p. 234, n. 8; p. 537, n. 34; p. 598, n. 94, 95; p. 600, n. 27; Trial, 38Cyc, p. 1749, n. 97.

*Ryland, Boys, Stinson & Mag* and *Brown, Douglas & Brown* for respondent.

602

*Landis & Duncan* for appellant.

BLAND, J.—This is an action for damages for breach of a contract to purchase a quantity of wool. There was a verdict and judgment in favor of plaintiff in the sum of $2400 and defendant has appealed.

Defendant insists that his demurrer to the evidence should have been sustained; first, because the wool was purchased by a sample and upon representations as to quality and that the wool tendered did not comply with the sample or the representations; second, that the contract of purchase was not by the defendant Dahlenberg but by a corporation known as the St. Joseph Wool Company of which he was president; and, third, that the contract was not evidenced by a memorandum such as is required by the Missouri Statute of Frauds. [Sec. 2170, R. S. 1919.]

In considering a demurrer to the evidence we must take the testimony, together with every reasonable inference that may be drawn therefrom, in favor of the plaintiff. Plaintiff's evidence tends to show that during the month of May, 1922, he had a number of lambs, estimated at about 3500 or 4000 head, in pens at Emporia, Kansas: that on the 4th, 5th or 6th of the month defendant through his agent Harper had a conversation with plaintiff's agent, Baker, at Kansas City, Missouri, about purchasing the wool from these lambs. On May 6th Baker received a telegram from plaintiff authorizing the former to sell the wool from the lambs at thirty-eight cents per pound. After the receipt of this telegram Baker showed it to Harper who said that he would go to Emporia and look at the wool. Harper on May 8th said that he "figured the shrinkage of this wool" at about sixty-three per cent and that he would take the wool at thirty-eight cents a pound. Baker told Harper that the lambs numbered from 3500 to 4000. On May 8th Baker and Harper entered into an oral agreement whereby defendant through Harper purchased the wool at thirty-eight cents per pound to be delivered F. O. B. Emporia and paid for there by draft. Defendant was to take all of the wool from the lambs. Baker denied that he was shown any sample of wool by Harper or that any representations were made concerning the quality of the wool. Baker testified that he understood from Harper that the latter had gone to Emporia and seen the lambs from which the wool was to be sheared, although the latter did not specifically state that he had seen them.

Harper's evidence tends to show that he purchased the wool upon representations of Baker as to its quality and by sample; that he took a sample of some other wool to Baker and that it was agreed when the wool in controversy was purchased that it was to be of the same kind and quality of wool as the sample. He denied that he had seen

the lambs at the time he purchased the wool and stated that he relied entirely upon what Baker told him; that Baker said that "the wool was as good as the sample."

On the day Harper purchased the wool he wired defendant "George F. Dahlenberg" at St. Joseph as follows: "Have purchased wool thirty-eight cents letter follows," signed, "W. I. Harper." Harper wrote a letter confirming the purchase but the same was lost and could not be produced at the trial. On May 9, 1922, defendant wrote, addressing the letter to the concern by which Baker was employed, stating, "We are in receipt of a telegram and also a letter from our Mr. Harper, confirming of purchase of Crawford's wool. We are very glad we were able to make purchase but we did not want to go so high in order to do it." The letter further stated, "If there is any more wools to be shorn around Kansas City," that defendant might be interested in purchasing it. The letter contained some other matters not necessary to mention and was signed "St. Joseph Wool Company." It was headed, "G. F. Dahlenberg. St. Joseph Wool Company, St. Joseph, Missouri."

About May 18th or 19th, defendant was notified that the wool was sacked and ready to be loaded at Emporia, whereupon he sent a representative to that city who, upon inspecting the wool, reported to the defendant that it did not come up to the sample and the representations and defendant refused to take it.

Plaintiff attempted to persuade defendant to take the wool under the contract of purchase but without avail and on May 26th plaintiff wired defendant stating that he would give him until two o'clock of May 27th to take the wool and that if it was not accepted by that time, he would sell it to the highest bidder "and hold you responsible for any loss." On May 29th there being no market for wool in Emporia and the nearest market being at Kansas City, Missouri, plaintiff shipped the wool to M. Lyon and Company, a Kansas City commission company, and instructed it to sell the wool at thirty-eight cents a pound. This concern unsuccessfully attempted to sell the wool at that price. Mr. Lyon of the commission company, testifying for plaintiff, stated, "We had a number of offers but the prices that were offered did not equal the price fixed by Mr. Crawford of thirty-eight cents; consequently they were only potential offers;" that the highest tentative offer he had was thirty-five cents.

On June 12th Lyon wired Crawford, who lived in Carlsbad, N. M., that he had received the tentative offer of thirty-five cents per pound. On June 13 plaintiff wrote the Lyon & Company commission company acknowledging receipt of this telegram and stating that "he would not sell under price agreed on." However, before this letter reached the commission company, the offer had been withdrawn. Subsequently on July 28th, plaintiff sold the wool to M. Lyon & Company so as

to net him thirty cents a pound F. O. B. Emporia. The commission company bought the wool to sell to one of its customers. The exact amount it received for the wool is not shown, but Lyon considered that it made a profit of only the commission, which was from one and one-half to three per cent, the evidence not showing what the commission was in this instance. Plaintiff therefore received for the wool thirty-one and one-half to thirty-three cents a pound, which Lyon stated equaled to thirty cents F. O. B. Emporia. Lyon further testified that plaintiff's price was thirty-eight cents a pound and that his company made an effort to get it but could not, and to the effect that if plaintiff had allowed his company to offer it at less than thirty-eight cents, in all probability it could have sold the wool for more money than plaintiff finally received for it.

Baker testified that "at the time the wool was offered (by him) for sale there was much wool-buying going on. We have sold buyers here and at the time lots of sheep being shorn. This condition did not exist very long after that. Buyers all left; the wool market was then practically at a standstill. That was probably two weeks after this sale." Lyon testified that the wool market advanced up to the first of June, but that during the time he had the wool for sale the trend of the market was lower. Defendant's witness, Jones, testified that there was an active demand for wool all during the months of May and June, 1922; that there was no sudden dropping off of buyers during those months but that the slack came along the forepart of July. He stated that the Monthly Statistical Summary of the Woolen & Worsted Industry showed that the market was slightly lower in June than in May and that the decline reached its lowest in September. The price of wool at Kansas City and other places was fixed in relation to the Boston market. Defendant's witness, Harper, stated that the demand for wool during June, 1922, was good. Defendant testified to the same effect.

The verdict of the jury has settled the conflicting testimony in this case as to whether the wool was sold by sample and specific representations as to quality or in the absence of sample and such representations, and there is nothing in defendant's contention that the demurrer to the evidence should have been sustained because the evidence shows that the wool did not come up to the alleged sample and representations.

As to defendant's insistence that there was no sufficient memorandum to meet the requirements of the Statute of Frauds, we think that the telegram that Harper sent to defendant on May 8th and the letter written by him to Baker's company the following day are connected by reference, impliedly at least, so as to show on their face that they related to the same subject-matter and that these documents clearly disclose the names of the contracting parties, the sub-

ject-matter and the price and therefore that none of the essential terms required to constitute a sale was absent. [Pierson-Lathrop Grain Co. v. Barker, 223 S. W. 941; Leesley Bros. v. Fruit Co., 162 Mo. App. 195; Peycke Bros. v. Ahrens, 98 Mo. App. 456; United Securities Co. v. Tilley, 177 Mo. App. 113; Carter v. Timber Co., 184 Mo. App. 523.] In the case last cited, at l. c. 529, the court said—

"It is always permissible to show the surroundings and circumstances of the contract and it is sufficient, as against the Statute of Frauds, that, after the court is put in the same position as the parties themselves, the terms and subject-matter of the contract are made certain."

The parties are sufficiently disclosed in these two documents. Reading them together it appears that defendant was the purchaser of the wool. We will hereinafter show that there was evidence that the St. Joseph Wool Company was the defendant, in fact, the telegram and letter themselves are some evidence of this. The telegram is addressed to "Geo. F. Dahlenberg." The letter is headed "G. F. Dalhenberg" and while "St. Joseph Wool Company" is used in connection therewith and is signed to the letter, it is nowhere mentioned as being a corporation. These papers show that plaintiff was the seller because the letter reads that "Crawford's wool" was being purchased. The subject-matter is sufficiently identified because the wool purchased is described as "Crawford's wool." The testimony shows that there was no definite number of pounds to be purchased but that the wool was to be shorn from Crawford's lambs then in pens in Emporia. Putting ourselves in the same position of the parties, what was meant by the use of the term "Crawford's wool" clearly appears. The price, of course, is stated.

It is true that neither of these documents was delivered to plaintiff at the time the contract was made or at any time for the purpose of evidencing the making of the contract; but—

"That the contract itself is not void and need not be in writing, or have a memorandum or note thereof made and signed, in order to its validity, is further evident from the holding of the courts that the note or memorandum need not be made contemporaneously with the contract. Such memorandum will be good if it come into existence at any time before suit brought. [Cunningham v. Williams, 43 Mo. App. 629; Perry on Trusts, sec. 82; 2 Wharton, Evid., sec. 872; 1 Reed, Stat. Frauds, sec. 325; Leather Co. v. Hieronomus, L. R. 10 Q. B. 140.] And after a breach had been committed. [Johnson v. Trinity Church, 11 Allen, 123.] And it has been held that the memorandum will be good, even though it come into existence after suit is brought (though this has been denied).

"A letter, though addressed to a third party, is sufficient, if it contain the requisite statement of the contract. [Cunningham v. Williams, 43 Mo. App. 629.] And it would not alter its availability,

if it should be written for the purpose of repudiating the contract. [Drury v. Young, 58 Md. 456; Bailey v. Sweeting, 9 C. B. (N. S.) 843; Buxton v. Rust, L. R. 7 Ex. 279; Wilkinson v. Evans, L. R. 1 C. P. 407.] Whether, if the repudiation was on account of the contract not being in writing, it should still be held not to prevent the use of the letter, is not considered. An answer or pleading in some other cause is sufficient. [Jones v. Lloyd, 117 Ill. 597; Gordon v. Green, 10 Ga. 534.] So are the minutes of a town council. [Marden v. Chaplin, 17 R. L. 423.] Or a church society. [Johnson v. Trinity Church, 11 Allen, 123.]'' [Cash v. Clark, 61 Mo. App. 636, 640, 641.] [See, also, Cunningham v. Williams, 43 Mo. App. 629; Truskett v. Rice Bros. Live Stock Commission Co., 180 S. W. 1048; Beall v. Miller, 207 Mo. App. 32, 35.]

The evidence concerning the question as to whether the contract was made by the defendant or the corporation known as the St. Joseph Wool Company is as follows: The St. Joseph Wool Company was organized by the defendant in 1914. He owned all the stock. Defendant's evidence tends to show that the corporation continued to transact business until 1925 when it was learned that because of the failure to file corporation returns the Secretary of State, in 1915, entered upon the records of his office a forfeiture of its charter. Defendant procured a reinstatement of the charter in 1925, and after this suit was brought, when he discovered the situation. Defendant testified that he conducted his business under the name of the St. Joseph Wool Company; that the St. Joseph Wool Company, a corporation, and defendant, personally, at all times made separate tax returns and paid taxes upon separate distinct property and that the St. Joseph Wool Company made separate income tax returns and paid separate income taxes. He testified that the reason he placed the name of G. F. Dahlenberg over the name of the St. Joseph Wool Company on his letterheads, was on account of the fact that his company had been confused with some other wool companies in St. Joseph with similar names.

Of course, there was never a legal forfeiture of the title of the corporation for the reason that there is no evidence that the Secretary of State had on file in his office the certificate of the Recorder of Deeds of the county in which the corporation was located, showing that the name of the corporation so failing to comply with the law was posted in his office for twenty days as required by the corporation act. [Hardware Co. v. Fisher, 269 Mo. 271.]

However, defendant testified that during the entire period prior to the reinstatement of the corporation no meeting of stockholders or directors were held except by the holding of a conference between the parties who happened to be the directors; that no minute books or records were kept of the meetings. No dividends were declared or paid. The evidence further shows that in February, 1924, defend-

ant filed in the circuit court of Jackson county a suit against Fred E. Baker, who represented plaintiff in the transaction involved in the case at bar, seeking to recover damages for the breach of an alleged contract in which Baker agreed to sell and deliver to *defendant, doing business as the St. Joseph Wool Company,* a quantity of Texas wool. This contract was alleged to have been made on May 17, 1922, nine days later than the contract involved in this case. We think there was ample testimony tending to show that defendant individually entered into the contract involved in the case at bar.

However, defendant says, "If the St. Joseph Wool Company had continued to exercise or attempted to exercise the powers and provisions of its franchise after this certificate or license had been forfeited, as provided in Article 1 of Chapter 90, Revised Statutes 1919, which defendant denies was the case, the directors thereof would have been guilty of a misdemeanor and they would have become liable as partners severally and individually for the debts of such corporation." It is therefore claimed that by reason of the circumstance mentioned in the statute, plaintiff should have alleged facts showing defendant was liable as a partner. However, the petition is not based upon the theory that defendant was liable by reason of these things. It pleads liability on the part of defendant squarely on the theory that defendant as an individual entered into the contract through his agent without reference to a corporation then existing or theretofore existing.

It is insisted that the court erred in giving plaintiff's instructions Nos. 1 and 2. These instructions submitted to the jury the question as to whether plaintiff after he treated the contract as rescinded, used reasonable diligence to dispose of the wool, and we think for this reason they were erroneous. The law in reference to the situation in which plaintiff was placed, by the refusal of the defendant to accept the wool, is this: He was privileged to store the wool in the place of delivery and sue defendant for the entire contract price, or to sell it in the market within a reasonable time for the best price obtainable, after giving notice to the buyer. When the latter course is pursued, the measure of damages is the difference between the contract price and the re-sale price. [Anderson v. Frank, 45 Mo. App. 482; Produce Co. v. Commission Co., 189 Mo. App. 654, 659, 660; Nelson v. Hirsch & Sons Co., 102 Mo. App. 498; Logan v. Carroll, 72 Mo. App. 613; Warehouse & Storage Co. v. Toomey, 144 Mo. App. 516, 520, 521; Pierson-Lathrop Grain Co. v. Britton, 195 Mo. App. 26.] However, the sale must be fairly made. [Rickey v. Tenbroeck, 63 Mo. 563, 568, 569; Carriage Co. v. Gilmore, 123 Mo. App. 19, 21.] And if there is no market for the goods at the place of delivery, then the sale should be made at the nearest and most available market. [Anderson v. Frank, supra; Warehouse Co. v. Toomey, supra; Grain Co. v. Britton, supra.]

It was therefore the duty of plaintiff, having elected to rescind the contract and sell the wool, to have sold it within a reasonable time on the market at Kansas City, his testimony tending to show that that was the nearest and most available market for the wool. It is usually a question for the jury as to whether the goods have been sold within a reasonable time. [Logan v. Carroll, supra.] However, we think that the circumstances in this case show as a matter of law that plaintiff did not use due diligence in disposing of the wool. [Gehl v. Milwaukee Produce Co., 116 Wis. 263, 274.] The minds of reasonable men could hardly differ on the question under the facts present in this case. The evidence shows that at the time plaintiff shipped the wool to Kansas City the market was declining. It is admitted by plaintiff "that there was no evidence that the market price of this wool was ever equal to the price-appellant agreed to pay." The shearing season was over and wool buyers were leaving and although the market was declining and never was at any time after plaintiff shipped the wool to Kansas City as high as thirty-eight cents a pound, plaintiff refused to permit the commission company to sell it for any less until about two months afterwards. There was evidence that this company could have sold it for more than it finally brought. The undisputed evidence shows that the market was lower in June and July than it was when the wool was shipped to Kansas City. While there was evidence of a continuing demand for wool during the months of June, the undisputed evidence is that the market, which was based upon the Boston market, was declining all of the time.

"The manner of sale is within the reasonable discretion of the seller; but it should be made in good faith and in the mode best calculated to produce a fair price for the goods, and as the seller acts as agent of the original buyer he is held to the same degree of care, judgment, and fidelity as an agent in possession of goods with instruction to sell to the best advantage." [35 Cyc. 523, 524.]

It may be that plaintiff's agency was coupled with an interest (Strauss, Kupfer & Co. v. Labsap, 59 Mo. App. 260, 261, 262) but how plaintiff's interest could have been subserved by the course he took, is not pointed out. For plaintiff to have insisted that his commission agent not sell the wool for less than thirty-eight cents a pound under the circumstances was certainly not due diligence.

Under the circumstances the sale was not fairly made and plaintiff is not entitled to recover (if anything) the difference between the sale price and the actual market value of the wool at Kansas City at the time of the breach of the contract. [Rickey v. Tenbroeck, supra, l. c. 567; Produce Co. v. Commission Co., supra; Nelson v. Hirsch & Sons, supra, l. c. 515.]

We think that the court erred in refusing to give defendant's instruction C. This instruction sought to tell the jury that unless they

found that defendant was at the time of the sale doing business as an individual and not as a corporation, the verdict should be for the defendant. In its answer the defendant set up that whatever transactions were had with plaintiff were by and on behalf of the St. Joseph Wool Company, a corporation. Plaintiff insists that the burden was upon defendant to show that it was a corporation and that this instruction is misleading as placing the burden of showing this upon plaintiff. Assuming that the instruction does place such a burden upon plaintiff, still it was a proper instruction; that part of the answer of the defendant seeking to allege that the agreement was had on behalf of the corporation was not the pleading of new matter but the facts could have been shown under a general denial. The petition having alleged that the contract was made by the defendant, the burden of proof was upon plaintiff to show this fact. Defendant having introduced testimony tending to show that it was made on behalf of the corporation, was entitled to have its theory pointedly submitted to the jury. The court erred in not giving this instruction which was a proper one upon the subject although in plaintiff's instruction No. 1 the jury were instructed that they should find, among other things, that "the defendant through his duly authorized agent W. I. Harper, acting for and on behalf of the defendant" entered into the contract of sale for the wool in controversy. Plaintiff's instruction did not submit in so many words whether or not the contract was made by the defendant or by the St. Joseph Wool Company, a corporation, and, as before stated, defendant had the right to have this matter directly submitted to the jury in its instruction C. [Marshall v. Brown, 230 S. W. 347; Stephens v. Eldorado Springs, 185 Mo. App. 464; Milles v. Kansas City Rys. Co., 247 S. W. 230; Boles v. Dunham, 208 S. W. 480; Webb v. Byrd, 219 S. W. 683; Collins v. Rankin Farms, 180 S. W. 1053.]

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.