**WUSSLER et ux.  v.  PETERSON et al.**

No. 43993.

Supreme Court of Missouri.

Division No. 2.

July 12, 1954.

William H. Becker, Scott O. Wright, Columbia, for appellants.   Clark & Becker, Columbia, of counsel.

Ralph L. Alexander, Columbia, for respondents.   Alexander, Ausmus, Harris & Welliver, Columbia, of counsel.

BARRETT, Commissioner.

In this action the plaintiffs, Urban and Evelyn Wussler, appeal from a judgment denying specific performance of a contract

to convey real estate. In their petition the plaintiffs alleged that on the 5th day of July 1951 the defendants, Russell and Allegra Peterson, made a written offer to sell their property, stipulating that acceptance was to be made by the Wusslers drawing up a contract, signing the contract, and mailing it to the Petersons. The plaintiffs alleged that they accepted the offer on the 6th day of July by drawing up the contract, signing it and mailing it to the Petersons for signature, and that the offer by the Petersons and their acceptance constituted a binding contract. They alleged that in the meantime the Petersons sold the property to Mr. D. W. Irle and that he had actual knowledge of the Wusslers' contract and equitable title and, therefore, they sought to compel a conveyance of the property from Mr. Irle to them in accordance with the terms of their contract with the Petersons.

The facts were that Russell and Allegra Peterson were the owners, as tenants by the entirety, of a house and two-acre plot of ground known as Twin Acres. Probably because of a change in place of employment, the Petersons, in 1951, began giving some consideration to a sale of their property in Columbia. They discussed the subject with the Wusslers in June but, as the appellants say, "nothing definite was agreed upon at that time by the parties about the sale of the property." On June 19th the Petersons went to Mrs. Peterson's former home in Ruthton, Minnesota, on June 23rd Mr. Peterson went to Middlebury, Vermont, and Mrs. Peterson remained in Ruthton. On June 28th Mr. Wussler addressed a letter to Mr. Peterson in Ruthton, Minnesota, in which he said, "I drove by your place today, thinking that you had sold it to someone else, but learned that you apparently left town without having sold it. * * * I assume that our method of payments was not satisfactory (referring to their earlier discussions) but I would like to re-emphasize that in all probability I could make payments of $150.00 or $200.00 a month, with the balance to be paid in full at the time a satisfactory agreement can be worked out for the sale of my property." In conclusion, he said, "I do not know your

present address so I am hoping this will be forwarded to you at your new home." Mrs. Peterson thought that this letter arrived in Ruthton about July 5th. In any event, she opened the letter, read it, and forwarded it to her husband, including a personal letter, in Middlebury. In a letter, relied upon by the plaintiffs as the offer, dated July 5th, Middlebury, Vermont, Mr. Peterson wrote to Mr. Wussler in Columbia. In part he said, "I'd be glad to sell the place to you under the system of payments which you mention, provided I would not have to give full legal possession of the property until I had received at least $500.00. It occurs to me that you might be willing to call the first few payments 'rent' and to wait until the required sum has been remitted before completing the sale. It seems to me that such a plan would simplify the matter for me, and also that it would work no hardship on you inasmuch as you would of course be able to occupy the property as soon as payments were begun. Therefore, if such an arrangement would be acceptable to you I'd be glad to have you draw up a contract specifying that payments are to be made at the rate of at least $150.00 per month and that they will be considered as 'rent' until the sum of at least $500.00 has been paid. * * * The sale price for the house and the three items mentioned would be $3100.00. If this be agreeable to you, please draw up a contract, sign it, and send it to me for signature." Mr. Peterson mailed a copy of this letter to his wife in Ruthton. Upon receipt of Mr. Peterson's letter Mr. Wussler had his attorney prepare a contract, dated July 10, 1951, for the purchase of Twin Acres. Mr. and Mrs. Wussler signed the contract and mailed it, together with a letter of transmittal and a check for $150, to Mr. Peterson in Vermont. The preparation and signing of the contract by the Wusslers, the check and letter of transmittal, and the proper mailing of them in Columbia on the 10th day of July is the acceptance relied upon as completing a valid, binding contract for the sale of the property.

Sometime in June Mr. Peterson had listed his property with the Spragg Real Estate

Company, and on July 9th that company sent a telegram to Mr. Peterson in Ruthton stating that the company had a cash offer of $3,250 for Twin Acres and "will send you contracts to sign. Answer at once." Upon receipt of the telegram Mrs. Peterson, on July 9th, wrote to Mr. Wussler: "I am sending you this letter to inform you that our house is sold, and not to continue to draw up any contract, as Mr. Peterson suggested in his letter of July 5. I am sorry, but things do happen sometimes in a hurry. Very truly yours Allegra Peterson." Mr. Wussler says that he received this letter on the 11th day of July, the day after he had mailed his contract to Mr. Peterson in Middlebury. On July 10th the Spragg Real Estate Company prepared and Mr. Irle signed a contract to purchase Twin Acres and paid Spragg $325 on the purchase price. That contract was mailed to Mr. and Mrs. Peterson in Ruthton on July 10th, Mrs. Peterson inserted a clause in the contract, "Trailer house is reserved," signed the contract on July 14th and on July 19th Mr. Irle was given a warranty deed to Twin Acres and paid the balance of the purchase price.

Upon learning, through a Spragg Real Estate Company advertisement in a newspaper on July 13th or 14th, of the sale to Mr. Irle, Mr. Wussler sent a telegram to Mr. Peterson, "Please wire collect your intention regarding our contract." Upon receipt of Mrs. Peterson's letter informing him of the sale, he wired Mr. Peterson in Vermont, "Letter from Allegra states property sold. Signed contract mailed yesterday. Offer and acceptance exists our correspondence Expect contract to be completed." On July 15th Mr. Wussler called on Mr. Irle and informed him that he had a contract with the Petersons to purchase Twin Acres. Thereafter lawyers representing the parties handled their correspondence and finally this suit followed.

As indicated, Mr. and Mrs. Wussler did not have a written agreement for the sale of Twin Acres signed by either Mr. or Mrs. Peterson as required by the statute of frauds. V.A.M.S. § 432.010. And so, of necessity, they rely upon the prior written negotiations between the parties as com-posing the completed contract. Specifically, they rely upon Mr. Peterson's letter of July 5, 1951, to Mr. Wussler as the offer and the contract signed by them, together with the check and letter of transmittal on July 10th as the acceptance of the offer, all the documents composing a present binding contract sufficient to satisfy the statute of frauds, the contemplated written contract, to be executed in the future, constituting a convenient memorial or mere record of the contract. Priest v. Oehler, 328 Mo. 590, 41 S.W.2d 783; Green v. Cole, 103 Mo. 70, 77, 15 S.W. 317. In short, upon the essential merits of their cause of action, the plaintiffs rely upon the rule that "Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions as stated in Sec. 25." Restatement, Contracts, Secs. 26, 19, 20, 24, 25. In order to certainly establish a contract prior to the Petersons' contract with Mr. Irle, they contend that the contract became final and complete upon their acceptance, manifested by the proper mailing of the contract, check and letter in Columbia on July 10th. 12 Am.Jur., Sec. 46, p. 538; 17 C.J.S., Contracts, § 52, p. 400; 31 C.J.S., Evidence, § 136, p. 777. In relying upon the prior negotiations, all with Mr. Peterson, as comprising the completed contract, and Twin Acres being owned by Mr. and Mrs. Peterson as tenants by the entirety, the plaintiffs are without an agreement or memorandum signed by Mrs. Peterson, 49 Am. Jur., Sec. 104, p. 122, and to charge her with liability upon the contract they rely either upon her letter to her husband, transmitting Mr. Wussler's letter of July 5th, or upon her letter to Mr. Wussler, dated July 9th, informing him that the property had been sold, as sufficient to meet the requirements of the statute of frauds.

As to the formation and existence of a contract resulting from prior negotiations, the respondents contend that there was no acceptance by the Wusslers on July 10th

of the precise offer made by Mr. Peterson and, therefore, there was not a binding contract on that date. It is their contention that the contract Mr. Wussler had drafted differed so materially from any prior agreed negotiations that its mere mailing did not constitute an acceptance or result in a contract between the parties. In this connection it is urged that Mr. Peterson did not intend that an acceptance of his letter of July 5th should constitute a contract, but contemplated a future written contract which he would execute provided the terms were agreeable to him.

It is not necessary to determine the question of fact whether these people treated their negotiations as a finality, Priest v. Oehler, supra, or whether they contemplated a reduction of their agreement to writing before it was to become a valid, binding contract. 1 Williston, Contracts, Sec. 28, p. 59. In the cases relied upon by the appellants the prior dealings of the parties plainly demonstrated that there was no intention to postpone contractual obligations until the execution of a final written agreement, or, the proposals were complete in and of themselves and there was an acceptance of the fact of a contract by reason of the conduct of the parties. Allen v. Chouteau, 102 Mo. 309, 14 S.W. 869; Shapleigh Inv. Co. v. Miller, Mo.App., 193 S.W.2d 931. Unquestionably, the prior negotiations of the parties, consisting of their correspondence and telegrams, may result in a contract and constitute a memorandum sufficient to satisfy the statute of frauds, Crawford v. Dahlenberg, 221 Mo.App. 600, 283 S.W. 65, but the documents must be complete in their essentials and the acceptance must be without condition, unequivocal and in exact accordance with the offer. Lux v. Lewis, Mo.Sup., 213 S.W.2d 315, 319–320. And the burden is upon the plaintiffs to clearly show their unequivocal, precise acceptance of the offer and the contract they seek to specifically enforce. Egger v. Nesbit, 122 Mo. 667, 27 S.W. 385.

The fact of the matter is that Mr. Wussler was not so positive in his letter of transmittal as to the existence of a contract as he was in his correspondence after he learned of the sale to Mr. Irle. In that letter he said, "If all provisions are agreeable with you (and * * * the lawyer, thought they would) please have your wife sign along with your own signature, in the appropriate place on both copies & return to me. * * * I hoped that the regular payments beginning Sept. 1 would again be satisfactory with you. * * * My wife and I are both very happy about the deal & hope we can get the total paid much sooner than the contract calls for." But as indicated, it is not necessary to say whether the proffered contract and letter of transmittal so differed from Mr. Peterson's offer that the prior negotiations and correspondence did not result in a contract or that the Wusslers did not sustain their burden of proof in this respect. Some of the matters relied upon by the respondents as not precisely conforming to the offer would probably be implied in the offer or relate to matters of minor detail, such as the furnishing of an abstract, annotation 149 A.L.R. 205, 214–215, but the provisions as to payments, the first payment to be made on September 1st, as to taxes, for an immediate outright sale, if the contract is to be so interpreted, as well as other provisions unnecessary to analyze here, present a more difficult question. Lux v. Lewis, supra; Drake v. Hicks, Mo.Sup., 249 S.W.2d 358; Bokern v. Loud, Mo.App., 108 S.W.2d 1049.

When Mrs. Peterson forwarded Mr. Wussler's letter of July 5th she also wrote her husband in Vermont a personal letter. The appellants rely upon that personal letter as the required authorization in writing to her husband to sell Twin Acres. The letter was destroyed and the appellants sought to prove its contents and the authorization by her oral testimony. 1 Restatement, Contracts, Sec. 216; Welch v. Veasley, 286 Mo. 93, 227 S.W. 58. In testifying Mrs. Peterson said, "I received a letter from Mr. Wussler and I opened it and looked at it and thought, 'Well, I'm not interested in this but I will just send it on' and I wrote my husband 'since you have been doing the business with him, maybe you want to an-

swer this one.' * * * I suggested that he might want to answer it since he had done practically all the talking. * * * That was really a personal letter. * * * I suggested that he tell him to wait until we came back in August. I remember I suggested that and I said 'since you have done the corresponding and talking with him maybe you should take care of this one rather than I. I don't want to be bothered with it.' " Mrs. Peterson, as well as her husband, was desirous of selling their property, but she did not sign a contract agreeing to do so, there is no claim of fraud, and, while she had knowledge of her husband's letters to Mr. Wussler, it may not be said that her testimony as to the contents of her personal letter established the required authorization in writing to her husband to act as her agent or to enter into a contract so absolutely obligating her that the plaintiffs are entitled to a decree of specific performance. Aiple-Hemmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S.W. 480; Tebeau v. Ridge, 261 Mo. 547, 170 S.W. 871, L.R.A.1915C, 367; Hunt v. United States Fire Ins. Co. of New York, 239 Mo. App. 625, 636, 193 S.W.2d 778, 785; Chamberlain v. Spalding, 237 Mo.App. 1040, 170 S.W.2d 454.

■■ It is true that a letter to a third person, even one repudiating or denying a contract, may constitute a sufficient memorandum to satisfy the statute of frauds. Cash v. Clark, 61 Mo.App. 636; Truskett v. Rice Bros. Live Stock Commission Co., Mo.App., 180 S.W. 1048. But Mrs. Peterson's letter to Mr. Wussler stands upon a different footing from her letter to her husband and is relied upon here for an entirely different purpose. 49 Am.Jur., Sec. 313, p. 629; annotation 148 A.L.R. 400. There were no accompanying documents and there was no reference to the contract prepared by Mr. Wussler's attorney or to his letter of transmittal and there could have been none on that date, July 9th, because she had not then seen the contract or his letter,

and the appellants do not make that claim. They claim that her letter to Mr. Wussler referred to her husband's letter to him, dated July 5th, and, therefore, was such a reference to the subject of the contract as to satisfy the statute of frauds. As previously quoted her letter to Mr. Wussler said, "I am sending you this letter to inform you that our house is sold, and not to continue to draw up any contract, as Mr. Peterson suggested in his letter of July 5." The letter does refer to her husband's letter of July 5th, but it does not contain an admission that she had authorized her husband to contract on her behalf, and there is no admission or assent that a contract had been made, and it certainly does not contain the terms or provisions of the contract relied upon by the plaintiffs. 37 C.J.S., Frauds, Statute of, § 180(d), p. 665; 49 Am.Jur., Sec. 323, p. 637; Rodney Milling Co. v. Farmers' Elevator, Mo.App., 237 S.W. 205; Crawford v. Dahlenberg, supra; Beall v. Miller, 207 Mo.App. 32, 230 S.W. 357; annotation 85 A.L.R. 1184, 1223.

All the factors considered, the appellants have not so sustained the burden of proving the contract required by the statute that they are entitled as a matter of right to specific performance, nor, as applied to this appeal, have they demonstrated, in the circumstances, that the trial court erred in denying their claim. Hilgedick v. Northstine, 316 Mo. 333, 344, 289 S.W. 939, 944; Eisenbeis v. Shillington, 349 Mo. 108, 159 S.W.2d 641. The judgment is therefore affirmed.

WESTHUES and BOHLING, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, Acting P. J., and CONKLING and HOLLINGSWORTH, JJ., concur.